**Opinion issued August 27, 2015**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-15-00256-CV

_____

## IN THE INTEREST OF M.B.M. AND J.J.M., CHILDREN

On Appeal from the 313th District Court
Harris County, Texas
Trial Court Case No. 2014-00491J

## MEMORANDUM OPINION

The trial court terminated the parental rights of L.M., the mother, to her two children, M.B.M. and J.J.M.[1]  In two issues L.M. argues that the evidence was legally and factually insufficient to support the termination of her parental rights

---

[1]     The trial court also terminated the parental rights of the children's fathers. However, only the mother appealed the trial court's judgment, so neither father is a party to this appeal.

under Texas Family Code section 161.001(1)(D) and (E) and under Family Code section 161.001(2).

We affirm.

## Background

L.M. is the mother of M.B.M. and J.J.M., who were born on August 21, 2010, and August 19, 2012, respectively. The Texas Department of Family and Protective Services ("DFPS") became involved in the children's lives on November 30, 2013, based on a report of L.M.'s neglectful supervision and physical abuse of both children. M.B.M., who was three years old at the time, had a swollen nose and was bleeding from her nose and mouth, and J.J.M., who was one year old, had an abrasion to his chin and "redness to [his] right cheek." The report also alleged that L.M. needed psychiatric care but refused treatment. Another report indicated that L.M. had been observed "dragging the children and being aggressive with them," which again resulted in physical injuries to both children. On January 30, 2014, DFPS filed its original petition in this case seeking termination of L.M.'s parental rights.

At trial, DFPS caseworker Erica Stringer testified that after taking M.B.M. and J.J.M. into protective care, DFPS learned that L.M. had previous involvement with DFPS. A court had terminated her parental rights to four older children, including the termination of her parental rights to two children in August 2010,

approximately one week before M.B.M. was born. Those terminations were based on findings that L.M. endangered two of her older children, failed to comply with the court-ordered rehabilitation plan, and used controlled substances in a manner that endangered her children. During the pendency of the current DFPS case, L.M. also gave birth to her seventh child, who was subsequently placed into DFPS care.

Stringer stated that, regarding DFPS's case involving M.B.M. and J.J.M., L.M. was given a family service plan. Stringer met with L.M. to discuss the services that DFPS offered to her, and she believed that L.M. understood the service plan. However, L.M. failed to complete her services. Specifically, she failed to complete the substance abuse treatment, domestic violence classes, anger management classes, and individual counseling requirements, and she also failed to obtain stable housing and employment. Stringer also testified that L.M. was involved in criminal activities and that she missed "a lot of visits" with her children over the course of the case because she was incarcerated. Stringer stated that L.M. had never called to ask how M.B.M. and J.J.M. were doing and had never sent letters or gifts to the children. Stringer further testified that M.B.M. had made an outcry of sexual abuse at the hands of her mother's friend to her grandmother, and DFPS determined that there was "reason to believe" the allegation.

DFPS presented evidence of L.M.'s criminal history. The record indicated that L.M. had a 2007 conviction for possession of cocaine; a 2009 conviction for assault; a 2009 conviction for possession of an inhalant; a 2011 conviction for assault of a family member; a 2013 conviction for criminal mischief; and 2013 conviction for possession of an inhalant. Several of these convictions resulted in L.M.'s being incarcerated for short periods of time. Also, in December 2013, L.M. committed the offense of forgery of a government financial instrument. In March 2014, she was placed on community supervision for this offense; however, in November 2014, the criminal court rendered judgment against L.M. for this offense and assessed a sentence of two years' incarceration. Thus, at the time of trial in the underlying proceeding, L.M. was incarcerated.

DFPS also introduced into evidence three drug tests administered to L.M. on February 13, 2014, May 9, 2014, and July 17, 2014. She tested positive for cocaine use in February 2014 and July 2014. L.M. refused to comply with the court-ordered blood test on May 9, 2014. Stringer testified that she asked L.M. to go take a drug test "at least 20 times," but L.M. refused on all but two occasions. DFPS records showed that L.M. likewise tested positive for opiate use on May 14, 2014.

Regarding M.B.M.'s and J.J.M.'s placement at the time of trial, Stringer testified that both children were placed with M.B.M.'s paternal grandmother and

her husband, who had previously adopted two of M.B.M.'s and J.J.M.'s siblings. At the time of trial, M.B.M was four years old and J.J.M. was two years old. They were both doing well in the grandparents' care and had no special needs. Stringer testified that the grandparents "do a great job with raising the kids" and that the children were "happy with them." Stringer stated that M.B.M. was enjoying school and that both children were "well-bonded" with the grandparents and their siblings. She also testified that the grandparents had provided care to both children even before DFPS became involved in the case and that they intended to adopt the children.

The grandmother testified at trial that she was happy to have custody of the children and that she wanted to continue to raise them. She stated that the children called her "mommy," and she did not believe that they would be happy anywhere else. The grandmother testified regarding M.B.M.'s outcry of sexual abuse by a male friend of L.M.'s. M.B.M. testified that the man gave her a bath, got into the bathtub with her, and touched her "private parts." The grandmother discovered that L.M. "would let the guy take [M.B.M.] on the weekends because he would give [L.M.] money just to take care of [M.B.M.]." The grandmother stated that M.B.M. was receiving therapy because of that abuse, that the therapy was helping M.B.M., and that she and her husband were willing to continue the therapy for as long as M.B.M. needed it. M.B.M. also reported to her grandmother and her

5

attorney ad litem that her mother hit her, pulled her hair when she was angry, and called her "a bitch."

L.M. was unable to be present at the trial to testify because she was incarcerated. She had been transferred to a different unit, so her counsel's bench warrant could not be executed. Her counsel sought a continuance in order to procure L.M.'s attendance in court, but the trial court denied this request. No witnesses testified on L.M.'s behalf, and she presented no evidence.

The trial court found clear and convincing evidence that L.M. violated Family Code subsections 161.001(1)(D), (E), (M), (N), (O), and (P) and that termination of her parental rights was in the children's best interest. Accordingly, the trial court rendered its final judgment terminating L.M.'s parental rights to M.B.M. and J.J.M. and naming DFPS as the permanent managing conservator.

This appeal followed.

## Sufficiency of the Evidence

L.M. challenges the sufficiency of the evidence supporting the trial court's determinations that termination was proper under Family Code subsections 161.001(1)(D) and (E) and that termination of L.M.'s parental rights was in the children's best interest.

## A.     Standard of Review

In a case to terminate parental rights brought by DFPS under section 161.001, DFPS must establish, by clear and convincing evidence, (1) that the parent committed one or more of the enumerated acts or omissions justifying termination and (2) that termination is in the best interest of the child.  TEX. FAM. CODE ANN. § 161.001 (Vernon 2014); *In re C.H.*, 89 S.W.3d 17, 23 (Tex. 2002). "Clear and convincing evidence" is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established."   TEX. FAM. CODE ANN. § 101.007 (Vernon 2014); *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009).

In conducting a legal-sufficiency review in a parental-rights-termination case brought by DFPS under Family Code section 161.001, we must look at the entire record to determine whether the evidence, viewed in the light most favorable to the finding, is such that a reasonable factfinder could have formed a firm belief or conviction about the truth of the matter on which DFPS bore the burden of proof.  *In re J.O.A.*, 283 S.W.3d at 344–45 (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)).  We "must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so," and we "should disregard all evidence that a reasonable factfinder could have disbelieved or found

to have been incredible." *Id.* at 344; *Jordan v. Dossey*, 325 S.W.3d 700, 712–13 (Tex. App.—Houston [1st Dist.] 2010, pet. denied).

In conducting a factual-sufficiency review, we view all of the evidence, including disputed or conflicting evidence. *In re J .O.A.*, 283 S.W.3d at 345. We should consider whether the disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding. *In re J.F.C.*, 96 S.W.3d at 266. The evidence is factually insufficient only if, "in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction" regarding the finding under review. *In re J.O.A.*, 283 S.W.3d at 345 (quoting *In re J.F.C.*, 96 S.W.3d at 266).

DFPS must establish both elements—that the parent committed one of the acts or omissions enumerated in section 161.001(1) and that termination is in the best interest of the child. *See* TEX. FAM. CODE ANN. § 161.001; *In re C.H.*, 89 S.W.3d at 23. Termination may not be based solely on the trier of fact's determination of the best interest of the child. *In re A.B.*, 437 S.W.3d 498, 504 (Tex. 2014) (citing *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987)). However, "[o]nly one predicate finding under section 161.001(1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest." *In re A.V.*, 113 S.W.3d 355, 362 (Tex.

8

2003); *In re A.C.*, 394 S.W.3d 633, 639 (Tex. App.—Houston [1st Dist.] 2012, no pet.).

## B. Findings Pursuant to Section 161.001(1)

In her first issue, L.M. argues that the evidence was legally and factually insufficient to establish that she endangered the children pursuant to subsections 161.001(1)(D) and (E). *See* TEX. FAM. CODE ANN. § 161.001(1)(D) (providing that court may terminate parent-child relationship if parent has "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child"); *id.* § 161.001(1)(E) (providing that court may terminate parent-child relationship if parent has "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child").

L.M. does not challenge the sufficiency of the evidence supporting the trial court's findings under subsections 161.001(1)(M), (N), (O), or (P). *See id.* § 161.001(1)(M) (permitting termination of parental rights when parent has had her parent-child relationship terminated with respect to another child based on finding of endangerment); *id.* § 161.001(1)(N) (permitting termination when parent has constructively abandoned child); *id.* § 161.001(1)(O) (permitting termination when parent has failed to comply with provisions of court order that specifically established actions necessary for parent to obtain return of child); *id.* §

161.001(1)(P) (permitting termination of parental rights when parent has used controlled substance in manner that endangered child's health or safety). "Only one predicate finding under section 161.001(1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest." *See In re A.V.*, 113 S.W.3d at 362. Because L.M. does not challenge the sufficiency of the evidence supporting the trial court's findings pursuant to subsections 161.001(1)(M), (N), (O), or (P), and the trial court also found that termination was in the children's best interest, as discussed below, we need not address the sufficiency of the evidence to support its findings pursuant to subsections 161.001(1)(D) and (E). *See id.*

We overrule L.M.'s first issue.

## C. Findings on Children's Best Interest

In her second issue, L.M. argues that the evidence was insufficient to support the trial court's conclusion that termination of her parental rights was in the children's best interest.

There is a strong presumption that the best interest of the children will be served by preserving the parent-child relationship. *See In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam). Prompt and permanent placement of the child in a safe environment is also presumed to be in the child's best interest. TEX. FAM. CODE ANN. § 263.307(a) (Vernon 2014). The Family Code and the Texas

10

Supreme Court have both set out numerous factors to be considered in determining a child's best interest, including, among others: the child's age and physical and mental vulnerabilities; the child's desires; the magnitude, frequency, and circumstances of harm to the child, including current and future danger to the child; whether there is a history of substance abuse by the child's family; the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; whether the child's family demonstrates adequate parenting skills, including providing the child and other children under the family's care with minimally adequate health and nutritional care, guidance and supervision, and a safe physical home environment; the stability of the home or proposed placement; and the parent's acts or omissions indicating an improper parent-child relationship and any excuses for the acts or omissions. *See id.* § 263.307(b); *In re R.R.*, 209 S.W.3d at 116; *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).

This is not an exhaustive list, and a court need not have evidence on every element listed in order to make a valid finding as to the child's best interest. *In re C.H.*, 89 S.W.3d at 27. The evidence supporting the statutory grounds for termination may also be used to support a finding that the best interest of the child warrants termination of the parent-child relationship. *Id.* at 28; *In re N.R.T.*, 338 S.W.3d 667, 677 (Tex. App.—Amarillo 2011, no pet.). Furthermore, the best

interest analysis may consider circumstantial evidence, subjective factors, and the totality of the evidence as well as the direct evidence. *In re N.R.T.*, 338 S.W.3d at 677.

Here, multiple factors support the trial court's finding that termination was in the children's best interest. M.B.M. was four and J.J.M. was two at the time of trial, and they had lived with their grandmother for a significant portion of their young lives. Thus, the children's ages and physical and mental vulnerabilities weigh in favor of terminating L.M.'s parental rights. *See* TEX. FAM. CODE ANN. § 263.307(b)(1).

Furthermore, L.M. tested positive for illegal drug use on multiple occasions, even after her children were removed from her care, and she failed to complete her family service plan, including the requirements that she complete substance abuse treatment, domestic violence classes, anger management classes, and individual counseling. She likewise failed to obtain stable housing or employment. *See In re E.C.R.*, 402 S.W.3d 239, 249 (Tex. 2013) (holding that findings under section 161.001(l)(O) that parent failed to complete court-ordered services can support best interest finding); *In re T.N.*, 180 S.W.3d 376, 383 (Tex. App.—Amarillo 2005, no pet.) ("A parent's engaging in illegal drug activity after agreeing not to do so in a service plan for reunification with her children is sufficient to establish clear and

convincing proof of voluntary, deliberate, and conscious conduct that endangered the well-being of her children.").

There was evidence that L.M. engaged in conduct that endangered M.B.M. and J.J.M. M.B.M. testified that her mother hit her, pulled her hair when she was angry, and called her "a bitch." L.M. also permitted a male friend to take M.B.M. away for the weekend in exchange for money, resulting in M.B.M.'s becoming a victim of sexual abuse. L.M. tested positive for drug use on multiple occasions after the children were removed from her care, and she did not comply with at least one court-ordered drug test. L.M. also had an extensive criminal history, including offenses that she committed after being ordered by the court to refrain from engaging in criminal activity. She was incarcerated at the time of trial, and she had missed numerous opportunities to visit her children. She likewise had failed to send the children any letters or gifts. Thus, the record contains evidence regarding circumstances that resulted in harm to the children and a lack of physical safety for the children. It also revealed the extent of L.M.'s history of drug abuse, her unwillingness to complete court-ordered services, and her lack of parenting skills. *See* TEX. FAM. CODE ANN. § 263.307(b) (providing that, in determining best interest of child, courts should consider circumstances of harm, history of substance abuse, willingness to complete services, demonstration of parenting skills, and safety of physical home environment); *Holley*, 544 S.W.2d at 371–72

(providing that, in determining best interest of child, courts should examine stability of home and proposed placement and parent's acts or omissions indicating improper relationship).

Regarding the children's placement at the time of trial, Stringer testified that the grandmother had been caring for the children since they were removed from L.M. and wanted to adopt them. The children were bonded to their grandparents and to their siblings who had previously been adopted by the grandparents. The grandmother testified that she had provided care for the children even before DFPS became involved in the children's lives. The children loved her and called her "mommy," and she did not believe that the children would be happy anywhere else. The grandmother and her husband were good caregivers and were committed to providing the care that M.B.M. and J.J.M. would need. Thus, the stability of the proposed placement also weighs in favor of terminating L.M.'s parental rights. *See Holley*, 544 S.W.2d at 371–72 (providing courts should consider stability of proposed placement in determining children's best interest).

We conclude that the evidence was legally sufficient to support the trial court's finding that termination of L.M.'s parental rights to M.B.M. and J.J.M. was in the children's best interest. *See In re J.O.A.*, 283 S.W.3d at 344–45.

L.M. argues that the evidence was incomplete because she was not able to be present to testify at trial due to the fact that the Texas Department of Criminal

Justice had transferred her to a different unit, thus precluding the execution of her bench warrant. However, she presents no argument or evidence demonstrating the necessity of her presence at trial. She likewise does not challenge the trial court's denial of the continuance sought by her trial counsel. L.M.'s counsel argued at trial that her second drug test showed a lower amount of drugs in her system, and, thus, there was no evidence that she had continued using drugs after being ordered by the court to stop, but L.M. did not present any evidence or make any other arguments at trial.

Viewing all of the evidence, as we must, we conclude that any disputed evidence was not so significant that a factfinder could not reasonably have formed a firm belief or conviction that termination of L.M.'s parental-rights was in the children's best interest. *See In re J.O.A.*, 283 S.W.3d at 345. Thus, we conclude that the evidence was both legally and factually sufficient to support the trial court's finding that termination was in the children's best interest. *See id.* at 344–45.

We overrule L.M.'s second issue.

## Conclusion

We affirm the judgment of the trial court.

Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Huddle, and Lloyd.