**Opinion issued December 17, 2015**



In The

# Court of Appeals

### For The

# First District of Texas

———————————

### NO. 01-15-00613-CV

———————————

### IN THE INTEREST OF M. C. M. A/K/A BABY GIRL M.

On Appeal from the 314th District Court
Harris County, Texas
Trial Court Case No. 2014-03160J

### MEMORANDUM OPINION

Soon after M.M. gave birth to a daughter, M.C.M. ("Molly"),[1] the hospital staff noted some peculiar behavior by Mother and requested a psychiatric assessment. Soon thereafter, the hospital contacted the Department of Family and

---

[1] The mother, M.M., will be referred to as "Mother," and the child, M.C.M., will be referred to by the pseudonym, "Molly," both to protect their privacy and for ease of reading.

Protective Services. The Department obtained emergency orders and took custody of Molly at the hospital. Following various hearings and a full trial, Mother's parental rights were terminated, making Molly eligible to be adopted by the foster parents who had been raising her.

In two issues, Mother contends that the evidence was legally and factually insufficient to support termination of her parental rights under Section 161.001(1)(E) of the Family Code[2] or to support the trial court's ruling that termination was in Molly's best interest.

We affirm.

## Background

Mother has five other living children. When the fourth of those children was born in 2002, both Mother and the child tested positive for cocaine. Mother admitted drug and alcohol use during that pregnancy, and the Department initiated custody proceedings. When the fifth child was born in 2005, the Department again became involved. During that inquiry, Mother relinquished her parental rights to all five of her children. They live with other family members.

When Mother was admitted to the hospital in 2014 to deliver Molly, the hospital staff noted in her medical records various "pregnancy problems,"

---

[2] Mother's parental rights were terminated under four separate subsections to Section 161.001(1): (E), (I), (N), and (O). TEX. FAM. CODE ANN. § 161.001(1) (West Supp. 2015). She only challenges the (E) basis for termination.

including "severe pre-eclampsia," "intractable" headaches, "tobacco use during pregnancy," and a history of "depression and social stressors," as well as "self discontinued" medication for depression. The records also contain a reference to "Bipolar disorder." Additionally, the medical records indicate Mother used marijuana during her pregnancy with Molly. She admitted using marijuana during the first trimester, and she tested positive for marijuana during a second-trimester drug test. Molly was born full term but had a low birth weight of only four pounds.

Mother's medical records contain numerous entries concerning aggressive and delusional behavior. The hospital staff described Mother as "shouting aggressively" and "moving towards [a physician] aggressively." She was also described as "irate and aggressive." In a separate entry, she was described as demonstrating "acute agitation."

Mother had no visitors at the hospital. When asked about her home situation, Mother purportedly gave inconsistent statements to the hospital staff concerning who lived with her and whether Molly's father would be involved and able to help. She also gave inconsistent responses regarding her mental health history and level of treatment compliance.

To obtain more information, the hospital staff contacted Mother's midwife, who told them that Mother had made "multiple disorganized statements" to her and had shown signs of "delusions" during her pregnancy with Molly. The midwife

3

also alerted the hospital staff that she understood Mother did not have custody of her other five children because the Department of Child Protective Services intervened, not because, as Mother had indicated to the hospital staff, she had elected to surrender custody.

In response, the hospital's psychiatric physicians performed a "complete safety assessment," and Dr. Jin Y. Han of the Baylor College of Medicine Menninger Department of Psychiatry and Behavioral Sciences prepared a written report the day after Molly's delivery. The report noted a history of depression but stated that, according to Mother, her last depressive episode was in 2003—more than ten years earlier. The report also noted the information obtained from Mother's midwife, including prior delusional thoughts and involvement with the Department. The examination findings included "slightly pressured" speech, "slightly expansive" affect, a "perseverative" fixation on Molly's care schedule, "poor" insight, judgement, and impulse control, and current "hypomanic" state. The psychiatric evaluation concluded with a psychiatric assessment that Mother "is at risk for harming [the] child at [the] present time."

After the hospital received the results of the psychiatric assessment, it contacted the Department to begin an inquiry, and the hospital staff supervised all of Mother's interactions with Molly at the hospital.

The Department's caseworker attempted to interview Mother at the hospital, but she was "uncooperative." According to the caseworker, Mother appeared delusional and made statements that the two of them had been "in the war together." The war reference was later explained to be a reference to serving in Vietnam together.

The Department obtained emergency temporary managing conservatorship of Molly, took custody of her from the hospital, placed her with foster parents, and initiated a parenting plan. Mother was required to refrain from any criminal activity; comply with all court orders; make reasonable efforts to attend meetings and court hearings; secure and maintain legal employment and provide documentation of income; secure and maintain a stable residence; submit to random drug tests with the understanding that failure to do so would be considered by the Department to indicate current use of drugs or alcohol and that a missed drug test would be considered an automatic positive result; enroll in, actively participate in, and successfully complete a six-to-eight week parenting education class; and complete a psycho-social evaluation, psychiatric evaluation, individual therapy, and substance abuse assessment.

A bench trial was held in May 2015. The Department caseworker, N. Williams, testified that Mother had been "diagnosed with multiple mental health issues [including] mood disorder [and] bipolar disorder" before Molly was born.

5

The referral was made to the Department because Mother was displaying signs of mental illness after delivery. Williams testified that Mother and Molly tested negative for drugs at the hospital but Mother subsequently tested positive for cocaine and, at a later date, for marijuana.

When asked whether Mother complied with the requirements stated in the parenting plan, Williams testified that Mother failed to comply with "[b]asically any of them." She failed to undergo any of the evaluations or complete the parenting classes. She failed two drug tests. And she refused subsequent hair-follicle drug tests. Further, once the Department allowed visitations with Molly, Mother visited her only once; she missed all three of the other scheduled visits.

Williams also testified about Mother's prior history with the Department. Mother had tested positive for cocaine in 2002 at the birth of one of the older children. She subsequently relinquished custody of all five of her children. Mother's drug use continued; she admitted to using marijuana in the early stages of her pregnancy with Molly. Mother denied using drugs after realizing she was pregnant, but she failed a drug test three months later, midway through her pregnancy.

After proffering the above evidence, as well as evidence that Mother was convicted of trespass and sentenced to a period of confinement during the

pendency of the termination proceeding, the Department requested that the trial court terminate Mother's parental rights.

Mother testified at trial. Contrary to the evidence, she denied using any drugs while pregnant with Molly and denied that she had tested positive for drug use while the parental termination suit was pending. Mother stated that she refused to comply with the court-ordered hair-follicle drug tests because, at first, she believed they were going to cut "at least a hundred strands" of her hair to perform the test, and she was unwilling to allow her hair to be cut so drastically. Upon further questioning by the judge, Mother admitted that she would have refused the hair-follicle drug test even if they removed only a single strand. She also admitting to realizing that a refused drug test would be treated as a positive test result, saying, "I know. You told me." While she agreed that she did not complete the eight sessions of parenting classes the Department required, she testified that she attended parenting seminars at other locations in an effort to fully comply with the eight-class requirement. Finally, Mother denied ever being diagnosed with a mental health issue.

The Department sought termination under Family Code Subsections 161.001(1)(E), conduct endangerment; (I), failure to submit to a court order; (N), constructive abandonment; and (O), failure to comply with a court order. *See In re M.S.*, 115 S.W.3d 534, 534 (Tex. 2003) (discussing each basis for termination). It

7

argued that Mother's drug use and failure to address her mental-health issues satisfied Subsection (E), her refusal to submit to hair-follicle drug testing satisfied Subsection (I); her failure to attend visitations with Molly satisfied Subsection (N), and her failure to meet any of the requirements of her parenting plan, as ordered by the trial court, satisfied Subsection (O).

The trial court found by clear and convincing evidence that Mother's parental rights should be terminated under Subsections (E), (I), (N), and (O), and, further, that termination was in Molly's best interest. Mother's parental rights were terminated, and she appealed.

## Review of Bases for Termination

Protection of the best interest of the child is the primary focus of the termination proceeding in the trial court and our appellate review. *See In re A.V.*, 113 S.W.3d 355, 361 (Tex. 2003). A parent's rights to "'the companionship, care, custody, and management of his or her children' is an interest far more precious than any property right." *Santosky v. Kramer*, 455 U.S. 745, 758–59, 102 S. Ct. 1388, 1397 (1982) (quoting *Lassiter v. Dep't of Soc. Servs. of Durham Cnty., N.C.*, 452 U.S. 18, 27, 101 S. Ct. 2153, 2160 (1981)); *see In re M.S.*, 115 S.W.3d at 547. Accordingly, termination proceedings are strictly scrutinized, and involuntary-termination statutes are strictly construed in favor of the parent. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). Nonetheless, "the rights of natural parents are not

8

absolute" and "[t]he rights of parenthood are accorded only to those fit to accept the accompanying responsibilities." *In re A.V.*, 113 S.W.3d at 361 (quoting *In re J.W.T.*, 872 S.W.2d 189, 195 (Tex. 1994)). Recognizing that parents may forfeit their parental rights by their acts or omissions, a court's primary focus in a termination suit is the protection of the child's best interest. *Id.*

To terminate parental rights under Section 161.001 of the Family Code, the Department must establish, by clear and convincing evidence, that (1) the parent committed one or more of the enumerated acts or omissions justifying termination and (2) termination is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(b) (West Supp. 2015). Clear and convincing evidence is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007 (West 2014); *In re J.F.C.*, 96 S.W.3d 256, 264 (Tex. 2002).

Mother challenges the legal and factual sufficiency of the evidence to support the trial court's predicate findings under Subsection (E) and to conclude that termination is in Molly's best interest. When the legal sufficiency of the evidence supporting the termination of parental rights is challenged, the reviewing court looks at all of the evidence in the light most favorable to the termination finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that the finding was true. *In re J.O.A.*, 283 S.W.3d 336, 344

9

(Tex. 2009); *In re J.F.C.*, 96 S.W.3d at 265–66. The reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. *In re J.O.A.*, 283 S.W.3d at 344; *In re J.F.C.*, 96 S.W.3d at 266. It should disregard all evidence that a reasonable factfinder could have disbelieved or found to be incredible. *In re J.O.A.*, 283 S.W.3d at 344; *In re J.F.C.*, 96 S.W.3d at 266. If the reviewing court determines that no reasonable factfinder could have formed a firm belief or conviction that the matter to be proved was true, the court must conclude that the evidence on that matter is legally insufficient. *In re J.O.A.*, 283 S.W.3d at 344; *In re J.F.C.*, 96 S.W.3d at 266.

Only when the factual sufficiency of the evidence is challenged does the reviewing court consider disputed or conflicting evidence. *In re J.O.A.*, 283 S.W.3d at 345; *In re J.F.C.*, 96 S.W.3d at 266. The evidence is factually insufficient in a parental rights termination case if, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction. *In re J.O.A.*, 283 S.W.3d at 345; *In re J.F.C.*, 96 S.W.3d at 266.

A single predicate finding under Section 161.001(1) of the Family Code is sufficient to support a judgment of termination when there is also a finding that termination is in the child's best interest. *In re A.V.*, 113 S.W.3d at 362 (affirming

termination decree based on one predicate without reaching second challenged predicate); *In re U.P.*, 105 S.W.3d 222, 236 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (affirming termination decree based on single predicate). If multiple predicate grounds are found by the trial court, we will affirm on any one ground because only one is necessary for termination of parental rights. *In re D.S.*, 333 S.W.3d 379, 388 (Tex. App.—Amarillo 2011, no pet.); *In re S.N.*, 272 S.W.3d 45, 49 (Tex. App.—Waco 2008, no pet.).

Here, the trial court based the termination of Mother's parental rights on four predicate grounds—Subsections 161.001(1)(E), (I), (N), and (O)—but she challenges only the Subsection (E) ground. By not challenging the sufficiency of the evidence on termination under Subsections (I), (N), and (O), Mother has waived any complaint about the trial court's findings under those subsections. *Toliver v. Tex. Dep't of Family & Protective Servs.*, 217 S.W.3d 85, 102 (Tex. App.—Houston [1st Dist.] 2006, no pet.) ("Holloway does not challenge the sufficiency of the evidence supporting the findings under [Subsections (F), (N), and (O)], and thus he waives any complaint about the sufficiency of the evidence to support these findings."); *Gamez v. Tex. Dep't of Family & Protective Servs.*, No. 03–09–00190–CV, 2009 WL 4456150, at *7 n.8 (Tex. App.—Austin Dec. 1, 2009, no pet.) (mem. op.) ("[T]he unchallenged finding concerning subsection (O) alone is sufficient to support the district court's order terminating Gamez's

11

parental rights."); *see In re A.V.*, 113 S.W.3d at 362 ("Only one predicate finding under section 161.001(1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest.").

Because each of the unchallenged findings is sufficient to justify termination, we overrule her first issue and proceed to consider Mother's argument that the evidence is legally and factually insufficient to support the trial court's finding that termination of her parental rights is in Molly's best interest.

**Best Interest of the Child**

Mother challenges the legal and factual sufficiency of the evidence to support the trial court's finding that termination of her parental rights is in Molly's best interest. In determining whether termination of parental rights is in a child's best interest, we consider several non-exclusive factors, including (1) the child's desires, (2) the current and future physical and emotional needs of the child, (3) the current and future physical danger to the child, (4) the parental abilities of the person seeking custody, (5) the availability of programs to assist the person seeking custody in promoting the best interest of the child, (6) the plans for the child by the person seeking custody, (7) the stability of the home, (8) any acts or omissions of the parent that may indicate that the parent-child relationship is improper, and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976).

12

The Department is not required to prove that all of these factors support the termination of parental rights, and the absence of evidence on some factors does not preclude the factfinder from reasonably forming a strong conviction that termination is in the child's best interest. *See In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). Evidence establishing a predicate act under Section 161.001(1) may also be relevant to determining the best interest of the child. *See id.* at 28.

The trial evidence demonstrates that Mother has a history of mental illness and illegal drug use. She was aggressive with hospital staff following Molly's birth, gave inconsistent statements regarding the level of support available to her to care for Molly, and made delusional statements to hospital staff and the Department caseworker. A psychiatric evaluation performed at the hospital indicated behavior consistent with mental illness, as well as a conclusion that Mother was "at risk for harming [the] child at [the] present time."

Mother tested positive for drug use at the birth of an older child and subsequently relinquished her parental rights to several children. She admitted drug use in the first trimester of her pregnancy with Molly and then tested positive for cocaine and marijuana during the pendency of this suit. *See In re A.C.*, 394 S.W.3d 633, 642 (Tex. App.—Houston [1st Dist.] 2012, no pet.) (concluding that past and ongoing drug use weighed in favor of conclusion that termination of parental rights is in child's best interest); *see also In re G.A.*, No. 01–11–00565–CV, 2012 WL

13

1068630, at *6 (Tex. App.—Houston [1st Dist.] Mar. 29, 2012, pet. denied) (mem. op.) (parent's drug use can endanger child's physical or emotional well-being and indicates instability in home environment); *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.) (parent's illegal drug use supports conclusion that environment endangers physical or emotional well-being of children). Mother admitted that she had refused to submit to hair-follicle drug tests even though she realized a refused test would be treated as a positive test result. Finally, Mother refused services under her parenting plan aimed at obtaining psycho-social and mental health evaluations as well as therapy.

The Department caseworker testified that it was in Molly's best interest that Mother's parental rights be terminated. She testified that Molly's foster parents were providing a loving home and meeting all of Molly's needs. The foster mother testified similarly and stated that she and her husband intended to adopt Molly if Mother's parental rights were terminated.

Viewing the evidence related to the *Holley* factors in the light most favorable to the finding, we hold that a reasonable factfinder could have formed a firm belief or conviction that termination of Mother's parental rights is in the best interest of the child. We, therefore, hold that the evidence is legally and factually sufficient to support the trial court's finding that termination of Mother's parental rights is in Molly's best interest and overrule Mother's second issue.

14

## Conclusion

We affirm the judgment of the trial court.


                                    Harvey Brown
                                    Justice

Panel consists of Chief Justice Radack and Justices Massengale and Brown.