

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-19-00068-CV
_____

### IN THE INTEREST OF H.L. AND H.P.L., CHILDREN

On Appeal from the 100th District Court
Donley County, Texas
Trial Court No. DCS-13-06999; Honorable Stuart Messer, Presiding

June 6, 2019

## MEMORANDUM OPINION

Before QUINN, CJ., and CAMPBELL and PIRTLE, JJ.

Appellant, T.L.,[1] the natural father of two children, H.L. and H.P.L., appeals the trial court's order terminating his parental rights to those children. In a single issue, he asserts that the trial court erred in finding there was clear and convincing evidence that it was in the best interest of the children to terminate his parental rights. We affirm the trial court's order.

---

[1] To protect the privacy of the parties involved, we refer to them by their initials. *See* TEX. FAM. CODE ANN. § 109.002(d) (West 2017). *See also* TEX. R. APP. P. 9.8(b).

**APPLICABLE LAW**

The Texas Family Code permits a court to involuntarily terminate the relationship between a parent and a child if the Department of Family and Protective Services establishes that a parent has engaged in one or more of the twenty-one predicate acts or omissions enumerated under section 161.001(b)(1) of the Code and it finds that termination of that relationship is in the best interest of the child. *See* TEX. FAM. CODE ANN. § 161.001(b)(1) (A)-(U), (b)(2) (West Supp. 2018).[2] *See also In re N.G.,* No. 18-0508, 2019 Tex. LEXIS 465, at *1 (Tex. May 17, 2019) (per curiam) (holding that while only one predicate finding under section 161.001(b)(1) is necessary, an appellate court may be required to review additional predicates where, as here, the trial court has based its ruling, in whole or in part, upon section 161.001(b)(1) (D) or (E)). In parental termination cases, due process mandates that the Department establish its case by a clear and convincing standard of proof. *Id.* at *7; § 161.206(a) (West 2014). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." § 101.007 (West 2014).

**BACKGROUND**

H.L. and H.P.L., ages nine and five respectively, were in the custody of their mother, B.L., pursuant to a prior decree of divorce that appointed both parents as joint managing conservators, when, in June 2017, they were removed from their home and

---

[2] For simplicity, we will cite provisions of the Texas Family Code throughout the remainder of this memorandum opinion simply as "section ___" or "§ ___."

placed in the protective custody of the Department.[3] The removal was precipitated by the fact that their mother tested positive for methamphetamine and marijuana use at the time of the birth of a new child.[4] When the Department filed its petition, B.L. had possession of multiple children by multiple men. She also had a six-year history with the Department which included complaints of medical neglect, physical neglect, and neglectful supervision of her children. As a result of the proceedings filed by the Department, the mother voluntarily relinquished her parental rights to H.L. and H.P.L.[5]

In July 2017, the trial court held an adversary hearing after which it issued a temporary order. The temporary order required T.L. to comply with the following actions in order to avoid the termination of his parental rights: submit to psychiatric or psychological evaluation and consultation, attend and participate in counseling sessions until released, successfully complete parenting classes, submit to and cooperate fully in a court-ordered drug and alcohol dependency assessment, submit to periodic drug testing, successfully complete a substance abuse treatment program, comply with each requirement in the Department's service plan and its amendments, and pay monthly child/medical support. T.L. attended the adversary proceeding with his attorney and signed the temporary order "as to form."

---

[3] Also, in June 2017, T.L. filed an *Original Counterpetition in Suit Affecting Parent-Child Relationship* asserting that it was in the best interests of H.L. and H.P.L. to appoint him sole managing conservator of the children.

[4] The children's mother also admitted to using marijuana throughout her pregnancy.

[5] Separate termination proceedings were pending against the mother related to her other children and their fathers; however, none of those terminations are at issue in this appeal.

At a status hearing attended by T.L. and his attorney in August, the trial court approved the Department's service plan incorporating the requirements set forth in its temporary order and made the service plan an order of the court.[6] The trial court specifically found that T.L. refused to review or sign the plan. At a status hearing attended by T.L. and his attorney in September, the trial court set a trial on the merits of the Department's petition for December 14, 2018. Neither he nor his attorney signed the resulting *Permanency Hearing Order Before Final Order* issued by the trial court.

At the December trial on the merits, T.L. was not in attendance, but his attorney attended and participated in the proceedings on his behalf. The Department's evidence established that he did not initiate any of his court-ordered services, maintain any contact with the Department's caseworker, visit his children in more than a year, or pay any court-ordered child/medical support. Throughout the termination proceedings, he either failed his court-ordered drug screenings or he was a no-show.[7] He was also unemployed and failed to maintain stable housing throughout the proceedings. Furthermore, his own mother agreed with the Department's counsel's characterization of her son as a "drug addict."

Soon after the removal, the Department placed the children with their paternal grandparents. The grandparents expressed an intent to adopt the children if their son's

---

[6] These services included the following: court-ordered drug testing, attending individual counseling, maintaining stable housing; maintaining stable and appropriate employment; completing a psychological examination; completing anger control training; completing rational behavior training; completing a drug and alcohol assessment with outreach screening and referral; actively participating in a twelve-step program; and obtaining a sponsor.

[7] In July 2017, T.L. tested positive for methamphetamine. In January 2018, he was a no-show for drug testing and in April 2018, he tested positive for methamphetamine. In June and September 2018, he was a no-show for drug testing.

4

parental rights were terminated. The grandparents fed, clothed, and transported the children to and from school. They helped the children with their homework daily, and when necessary, assured that the children were tutored after school. During their time with their grandparents, the children bonded with them.

The children's counselor testified that both children suffered from an adjustment disorder that required counseling.[8] Although the grandparents made their best effort to see that the children attended counseling sessions regularly, some appointments were missed due to an illness and transportation issues. Additionally, aside from placement with the children's grandparents, the Department had not explored placement with a non-relative family.

In January 2019, the trial court issued its order finding by clear and convincing evidence that the termination of T.L.'s parental rights to H.L. and H.P.L. was warranted based on six different predicate grounds: (1) § 161.001(b)(1)(D) (knowingly placed or allowed the children to remain in conditions or surroundings which endangered the physical or emotional well-being of the children); (2) § 161.001(b)(1)(E) (knowingly endangered the children's physical and emotional well-being); (3) § 161.001(b)(1)(F) (failed to support the children); (4) § 161.001(b)(1)(N) (constructively abandoned the children); (5) § 161.001(b)(1)(O) (failed to take specified actions necessary for return of the children); and (6) § 161.001(b)(1)(P) (used a controlled substance in a manner that endangered the health and safety of the children). In addition, the trial court found that

---

[8] The children's counselor described the disorder as stress, sadness, or depression suffered when major changes occur in a person's life such as removal or constant instability.

termination of the parent-child relationship was in the best interests of the children pursuant to § 161.001(b)(2).

At the same time, the trial court appointed the Department as the children's permanent managing conservator and ordered that the children remain placed with their paternal grandparents so long as T.L. had no contact with the children. The trial court additionally ordered that T.L. be "criminally trespassed" from the grandparents' home. The trial court further ordered that if he should be found in the grandparents' home, regardless of whether the children were present, a hearing would be scheduled regarding the children's removal from the home.

On appeal, T.L. contends that the trial court erred in finding there was clear and convincing evidence that it was in the children's best interests to terminate his parental rights. We disagree.

### STANDARD OF REVIEW

The natural right existing between parents and their children is of constitutional dimension. *See Santosky v. Kramer*, 455 U.S. 745, 758-59, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982). *See also Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). Consequently, termination proceedings are strictly construed in favor of the parent. *In re E.R.*, 385 S.W.3d 552, 563 (Tex. 2012). Parental rights, however, are not absolute, and it is essential that the emotional and physical interests of a child not be sacrificed merely to preserve those rights. *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002). Furthermore, when reversing a termination based on insufficient evidence, an appellate court must "detail the evidence relevant to the issue of parental termination and clearly state why the evidence

is insufficient to support a termination finding by clear and convincing evidence." *In re A.B.,* 437 S.W.3d 498, 503 (Tex. 2014).

As previously stated, the Due Process Clause of the United States Constitution and the Texas Family Code require an application of the heightened standard of "clear and convincing evidence" in cases involving involuntary termination of parental rights. *See In re N.G.,* 2019 Tex. LEXIS 465, at *1; § 161.206(a) (West 2014). Due to this heightened evidentiary burden at trial, the Texas Supreme Court has concluded that appellate review of involuntary termination cases also warrants a heightened standard of review. *In re N.G.,* 2019 Tex. LEXIS 465, at *1 (citing *In re A.B.*, 437 S.W.3d at 502). In that regard, the Supreme Court has determined that, when reviewing the sufficiency of the evidence to support a predicate ground for termination, due process requires an appellate court to review the sufficiency of proof under section 161.001(b)(1)(D) or (E), even when another ground is sufficient for termination, due to the potential collateral consequences arising from the possible termination of parental rights as to a different child. *Id.* at *7-8.

### BEST INTEREST UNDER SECTION 161.001(b)(2)

Because T.L. does not contest any of the predicate grounds for termination under section 161.001(1)(b)(1), we will limit our analysis to whether the evidence establishes that termination was in the best interests of the children according to a clear and convincing standard of proof. *See In re N.G.,* 2019 Tex. LEXIS 465, at *8. As stated above, the Department is required to prove by clear and convincing evidence that termination of T.L.'s parental rights was in the best interests of H.L and H.P.L. *See* § 161.001(b)(2); *In re K.M.L.*, 443 S.W.3d 101, 116 (Tex. 2014). Only if no reasonable fact

finder could have formed a firm belief or conviction that termination of his parental rights was in the best interest of each child can we conclude the evidence to be insufficient. *Id.* (citing *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)).

There is a strong presumption that the best interest of a child is served by preserving the parent-child relationship. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). Keeping that principle in mind, we must further acknowledge that prompt and permanent placement of a child in a safe environment is also presumed to be in that child's best interest. *See* § 263.307(a) (West Supp. 2018).

In order to assess the trial court's best interest determination, we may consider any of the thirteen factors itemized in the non-exhaustive list of factors found in section 263.307(b). Similarly, the Supreme Court has set out other factors to consider when determining the best interest of a child. *See Holley v. Adams,* 544 S.W.2d 367, 371-72 (Tex. 1976). Those factors include (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individual seeking custody; (5) the programs available to assist the individual to promote the best interest of the child; (6) the plans for the child by the individual or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one; and (9) any explanation or excuse for the acts or omissions of the parent. Importantly, mere absence of evidence about some of these considerations does not preclude a fact finder from reasonably forming a firm belief or conviction that termination is in the best interest of a child, particularly if the evidence was undisputed that the parental relationship

8

endangered the safety of the child.  *In re C.H.*, 89 S.W.3d at 27; *In re A.C.*, 394 S.W.3d 633, 642 (Tex. App.—Houston [1st Dist.] 2012, no pet.).

A best interest analysis may consider circumstantial evidence, subjective factors, and the totality of the evidence, as well as direct evidence.  *See In re N.R.T.*, 338 S.W.3d 667, 677 (Tex. App.—Amarillo 2011, no pet.).  Additionally, a child's need for permanence through the establishment of a "stable, permanent home" has been recognized as the paramount consideration in determining best interest.  *See In re K.C.*, 219 S.W.3d 924, 931 (Tex. App.—Dallas 2007, no pet.).

### ANALYSIS

Applying the *Holley* factors to determine whether termination of T.L.'s parental rights was in the best interests of H.L. and H.P.L., we find the first factor, the desires of the child, inapplicable because the children are too young to make a meaningful decision about their placement.  When considering the second factor, the emotional needs of the children now and the future, we find this factor favors the Department's position because throughout the proceedings, T.L. was, for the most part, absent from the proceedings and from the children by failing to engage in any visitation with the children.  Such prolonged periods of separation can create emotional instability and a sense of abandonment in the children.  The third factor, the emotional and physical danger to the children now and in the future also weighs in favor of termination because he tested positive for methamphetamine use on several occasions, was a "no-show" for many drug screens, and did not seek or participate in any drug abuse or alcohol assessments or rehabilitation programs offered by the Department.  The fourth factor, the parental abilities of the person seeking custody, also weighs in favor of termination because he failed to demonstrate

9

positive parenting skills throughout the proceedings. Furthermore, he ignored efforts to improve any skills he might have had through parental counseling or visitations. Regarding the fifth factor, although there were many programs available to assist him to promote the best interests of the children, he did not seek out or participate in any activities or programs in the service plan. The sixth factor, T.L.'s plans for the children, also weighs in favor of termination because there was no evidence presented at the final hearing that indicated he had any plans for the children's future. As to the seventh factor, the suitability of the home or proposed placement, there was also no evidence that he could provide a stable home. To the contrary, the only evidence at the final hearing was that he did not have a home and was living in an automotive shop in return for labor. As to the eighth factor, the acts or omissions of a parent indicating the lack of a proper parent-child relationship, his disinterest in the termination proceedings, continued drug use, and complete non-compliance with the service plan indicate that the existing parent-child relationship was both weak and improper. Regarding the ninth factor, any excuse for the acts or omissions leading to filing of the termination proceeding, he did not provide evidence of any explanation or excuse for his drug use or continued absence from his children during the termination proceedings.

Furthermore, in support of his appeal, T.L. does not point to any evidence to support a finding that termination was not proper. Instead, he simply asserts that termination should be a remedy of last resort. On the other hand, the Department's evidence showed that the children have bonded with their grandparents and their needs are being met. The grandparents also intend to adopt the children and continue to provide a safe and stable environment for them. Accordingly, we find there was sufficient

10

evidence to support the trial court's finding, under a clear and convincing standard of proof, that termination of T.L.'s parental rights was in the best interests of his children. As such, we overrule his single issue.

**CONCLUSION**

The trial court's order terminating T.L.'s parental rights to H.L. and H.P.L. is affirmed.


Patrick A. Pirtle
Justice