**Affirmed and Memorandum Opinion filed June 20, 2019.**



In The

# Fourteenth Court of Appeals

### NO. 14-19-00069-CV

## IN THE INTEREST D.G. AND D.G., CHILDREN

**On Appeal from the 314th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2018-00242J**

## MEMORANDUM OPINION

D.M.W. (Mother) appeals from a final order terminating her parental rights and appointing the Department of Family and Protective Services (the Department) as the sole managing conservator of her two children, D.G. (Danielle) and D.G. (David).[1] On appeal, Mother contends the evidence is factually insufficient to support the trial court's finding that termination of her parental rights is in the best interest of her children. We affirm.

---

[1] We use pseudonyms to refer to appellant, the children, and other family members. *See* Tex. Fam. Code Ann. § 109.002(d); Tex. R. App. P. 9.8.

# I. FACTUAL AND PROCEDURAL BACKGROUND

## A. The Department of Family and Protective Services Investigation

Mother gave birth to twins in January 2018. The female twin, Danielle, was born without any health concerns. The male twin, David, was born with a diagnosis of down syndrome and a heart defect. David was placed in the neonatal intensive care unit immediately after his birth. Within days of their birth, the Department received a referral of neglectful supervision alleging that Mother tested positive for cocaine in November 2017, just two months before giving birth to the twins. The twins were not drug tested at birth. At the time of the twins' birth, the Department was conducting an investigation regarding Mother's care of her son C.G. (Collin). Mother was not participating in the family service plan in Collin's case. Mother's parental rights to two of her other children had been terminated on grounds of endangerment, abandonment, failure to comply with a service plan, and endangering use of a controlled substance. *See* Tex. Fam. Code Ann. §§ 161.001(b)(1)(E), (N), (O), (P).

Mother has an admitted history of bipolar disorder and schizophrenia but does not take medication for either diagnosis. Mother told the Department investigator that she does not have a job and lives alone. While Mother did admit she tested positive in Collin's case, she stated that she did not know how that happened because she "doesn't use cocaine."

Mother did not give the Department the names of any family members who could assist with the twins and informed the Department investigator that she wanted the children to be placed in foster care. Because of Mother's history and the Department's concern that she would abscond with the twins, the Department requested that it be named their temporary managing conservator.

### B. Trial

Trial commenced eleven months after the twins were born. Before testimony began, the trial court admitted the following evidence: (1) the pretrial removal affidavit prepared by the Department; (2) a 2015 order terminating Mother's parental rights; (3) a 2017 order terminating Mother's parental rights; (4) Mother's drug test results; and (5) the court-appointed child advocate's report.

#### 1. Department Caseworker

The Department's caseworker, Santiago Cirnigliaro, testified that the twins were in an adoptive foster home that was addressing all their needs. Cirnigliaro explained that David was born with down syndrome and has a myriad of other health concerns including, reduced lung function requiring oxygen ten hours a day, a blood clot in his leg, and a possible surgery on his tongue. David will likely face a lifetime of medical attention. The twins' foster parents have two other children with down syndrome and, according to Cirnigliaro, "they know what they're getting themselves into." The foster parents love the twins and want to permanently adopt them.

Cirnigliaro testified that this case began when the Department received a referral alleging that Mother used cocaine while she was pregnant with the twins. Mother was required to take drug tests while she was pregnant pursuant to an investigation regarding Collin. During the course of the underlying investigation, Mother's parental rights to Collin were terminated on grounds of endangerment, failure to comply with a service plan, and endangering use of a controlled substance. *See* Tex. Fam. Code Ann. §§ 161.001(b)(1)(D), (E), (N), (O), (P).[2]

---

[2] This court affirmed the trial court's order terminating Mother's parental rights in *In re C.G.*, No. 14-18-00412-CV, 2018 WL 4702403 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (mem. op.).

Cirnigliaro testified that between the previous investigation and the current investigation, Mother completed a handful of her services, including providing a reward letter for proof of income and a copy of her lease. Mother did not complete her individual therapy, nor has she followed up on her recommended mental health treatment. Mother failed to show up at trial but attended all supervised visits.

Cirnigliaro reviewed Mother's drug test results, which showed Mother tested positive for cocaine in hair follicle tests in September 2017, November 2017, and December 2017, months before the twins' birth. Mother tested positive for cocaine again in February 2018, and September 2018, after the twins were removed from her care.

### 2. Child Advocate

The volunteer advocate (sometimes referred to as the "CASA volunteer" or the "Texas Court Appointed Special Advocate"[3]), Aart Schenau, testified that due to David's medical needs and Mother's history of drug abuse, it would be in the twins' best interest for Mother's parental rights to be terminated. Schenau also prepared a report, which was entered into evidence. The report stated that Mother was attentive and engaged during the family visit. According to the report, David requires oxygen twenty-four hours a day and he is scheduled for medical appointments on a weekly to bi-weekly basis for the foreseeable future. David is on five different medications and receives injections twice a day. David's foster parents have been trained in managing his oxygen needs, including oxygen bottles, a generator, and his prescribed supply doses. Schenau observed David at home with his foster parents and noted that the foster parents "show deep care and affection for him." David has also been diagnosed with sleep apnea, which requires

---

[3] *See* Tex. Fam. Code Ann. § 107.031; *In re K.M.L.*, 443 S.W.3d 101, 106 n.2 (Tex. 2014).

his foster parents to monitor him throughout the night. David's health is neither improving nor visibly deteriorating and he will require intensive care long into his future. Any reduction in David's current level of care could be life-threatening. David's foster parents do not have employment outside of the home and both contribute to his required twenty-four-hour care. According to Schenau's report, the foster parents "have extensive experience with down syndrome children."

### 3. Trial Court's Termination of Parental Rights

After testimony concluded, the Department requested Mother's and Father's parental rights be terminated. Specifically, the Department requested Mother's rights be terminated under section 161.001(b)(1)(M) based on the prior orders of termination on grounds of endangerment against Mother. The trial court agreed and terminated Mother's and Father's parental rights. In its final decree, the trial court found termination of Mother's and Father's rights to be in the children's best interest. Father did not appeal.

## II. ISSUE AND ANALYSIS

In her sole issue on appeal, Mother challenges the factual sufficiency of the evidence to support the trial court's finding that termination of her parental rights is in the twins' best interest. Mother concedes the sufficiency of the evidence supporting the trial court's finding under section 161.001(b)(1)(M) of the Family Code. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(M).

### A. *Standard of Review*

Involuntary termination of parental rights is a serious matter implicating fundamental constitutional rights. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985); *In re D.R.A.*, 374 S.W.3d 528, 531 (Tex. App.–Houston [14th Dist.] 2012, no pet.). Although parental rights are of constitutional magnitude, they are not absolute. *In*

*re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002) ("Just as it is imperative for courts to recognize the constitutional underpinnings of the parent-child relationship, it is also essential that emotional and physical interests of the child not be sacrificed merely to preserve that right.").

Due to the severity and permanency of the termination of parental rights, the burden of proof is heightened to the clear and convincing evidence standard. *See* Tex. Fam. Code Ann. § 161.001; *In re J.F.C.*, 96 S.W.3d 256, 265–66 (Tex. 2002). "Clear and convincing evidence" means "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code Ann. § 101.007; *In re J.F.C.*, 96 S.W.3d at 264. This heightened burden of proof results in a heightened standard of review. *In re C.M.C.*, 273 S.W.3d 862, 873 (Tex. App.–Houston [14th Dist.] 2008, no pet.).

In reviewing the factual sufficiency of the evidence, we consider and weigh all of the evidence, including disputed or conflicting evidence. *In re J.O.A.*, 283 S.W.3d at 345. "If, in light of the entire record, the disputed evidence that a reasonable fact finder could not have credited in favor of the finding is so significant that a fact finder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id*. We give due deference to the fact finder's findings and we cannot substitute our own judgment for that of the fact finder. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). The fact finder is the sole arbiter when assessing the credibility and demeanor of witnesses. *Id*. at 109.

### B. Best Interest of the Children

We review the entire record in deciding a challenge to the court's best-interest finding. *In re E.C.R.*, 402 S.W.3d 239, 250 (Tex. 2013). There is a strong

presumption that the best interest of a child is served by keeping the child with his or her natural parent. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006); *In re D.R.A.*, 374 S.W.3d at 533. Prompt and permanent placement of the child in a safe environment is also presumed to be in the child's best interest. Tex. Fam. Code Ann. § 263.307(a).

Courts may consider the following nonexclusive factors in reviewing the sufficiency of the evidence to support the best interest finding, including: the desires of the child; the present and future physical and emotional needs of the child; the present and future emotional and physical danger to the child; the parental abilities of the persons seeking custody; the programs available to assist those persons seeking custody in promoting the best interest of the child; the plans for the child by the individuals or agency seeking custody; the stability of the home or proposed placement; acts or omissions of the parent which may indicate the existing parent-child relationship is not appropriate; and any excuse for the parent's acts or omissions. *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976); *see also* Tex. Fam. Code Ann. § 263.307(b) (listing factors to consider in evaluating parents' willingness and ability to provide the child with a safe environment). This list is not exhaustive, and evidence is not required on all of the factors to support a finding terminating parental rights. *Id.*; *In re D.R.A.*, 374 S.W.3d at 533.

### 1. Desires of the children

When a child is too young to express his or her desires, the fact finder may consider that the child has bonded with the foster family, is well cared for by them, and has spent minimal time with a parent. *In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.). Danielle and David have been living with their foster parents since they were released from the hospital after birth. It is the only home they have known. The foster parents have shown they are able to

care for David's extensive medical needs. Mother and the twins spent time together during the supervised visitations and, according to the Department's caseworker, these visits went well.[4] Although Mother's visits have gone well, her time with the twins has been minimal. There is evidence the twins are well cared for by their foster parents. This factor weighs in favor of the finding of termination.

## 2. The present and future physical and emotional needs of the children

David has extensive medical needs requiring twenty-four-hour supervision. David has twice weekly doctor's appointments scheduled for the foreseeable future. The foster parents have experience with special needs children and have proven their ability to provide David with around-the-clock care. The foster parents have shown commitment to the permanent care of David by learning how to manage David's oxygen supply and the accompanying equipment. David's on-going medical needs are immense, and his foster parents have proven they will do everything in their power to meet them. Mother, on the other hand, has failed to keep her own mental-health treatment appointments, has not completed the therapy recommended in her service plan, and continued to test positive for cocaine throughout the pendency of this termination. *See In re O.R.F.*, 417 S.W.3d 24, 39-40 (Tex. App.—Texarkana 2013, pet. denied) (evidence demonstrated mother would be unable to meet the child's needs where mother had missed appointments for counseling, had experienced issues with transportation, and had a long history of drug abuse). This factor weighs in favor of termination as to David.

Danielle will also benefit from the permanent loving home established by her foster parents. At the time of trial, she was only ten-months old and, therefore, solely dependent on her caregivers for her needs. *See In re T.T.*, No. 04-17-00377-

---

[4] It is unclear whether Mother visited both twins or just Danielle. The caseworker testified David is "on oxygen ten hours a day, which is why he can't come to the visits."

CV, 2017 WL 6597832, at *4 (Tex. App.—San Antonio Dec. 27, 2017, no pet.) (mem. op.) (noting that because the children were young, they required constant care and supervision, and depend solely on their caregivers to have their needs met.). While she was pregnant, Mother demonstrated an inability to put the needs of her unborn children before her own by using cocaine while she was pregnant. A fact finder may infer from a parent's past inability to meet the child's physical and emotional needs and inability or unwillingness to meet the child's needs in the future. *In re J.D.*, 436 S.W.3d at 118. This factor weighs in favor of termination as to Danielle.

3. **The emotional and physical danger to the children, now and in the future**

A parent's ability to provide a child with a safe environment is a primary consideration in determining the child's best interest. *In re M.L.G.J.*, 14-14-00800-CV, 2015 WL 1402652, at *4 (Tex. App.—Houston [14th Dist.] Mar. 24, no pet.) (mem. op.). Mother's parental rights were terminated under subsection (M), which requires evidence that Mother's parental rights had been previously terminated on grounds of endangerment. An order of termination was entered into evidence showing Mother's parental rights were terminated as to two of her children in 2015 under subsection (E) and as to another one of her children in 2018 under subsections (D) and (E). *See* Tex. Fam. Code §§ 161.001(b)(1)(D), (E). Subsection (D) requires a showing that Mother knowingly placed or knowingly allowed her child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child. Subsection (E) requires a showing that Mother engaged in conduct or knowingly placed her child with persons who engaged in conduct which endangers the physical or emotional well-being of the child. Evidence establishing one of the predicate acts under section 161.001(b)(1) is

relevant to determine the best interest of the children. *In re A.H.L.*, No. 01-16-00784-CV, 2017 WL 1149222, at *4 (Tex. App.—Houston [1st Dist.] Mar. 28, 2017, pet. denied) (mem. op.). Mother has engaged in conduct which rose to the level of endangerment sufficient to warrant the termination of her parental rights to three of her children. Evidence of Mother's prior terminations on the basis of endangerment weighs in favor of termination in this case.

Moreover, Mother continued her course of endangering conduct with regard to the twins. She tested positive for cocaine both before and after the twins were removed from her care. A parent's drug use and its effect on the ability to parent may qualify as an endangering course of conduct and supports a finding that termination of parental rights is in the best interest of the child. *In re A.C.*, 394 S.W.3d 633, 642 (Tex. App.—Houston [1st Dist.] 2012, no pet.). Evidence of Mother's continued use of illegal drugs while pregnant and after her children were removed weighs in favor of the trial court's best-interest finding.

### 4. The parental ability of the individuals seeking custody

In considering this factor, we may look to Mother's past performance as a parent in evaluating her fitness to provide for the twins and the trial court's determination that termination of her parental rights would be in the twins' best interest. *See In re I.R.*, No. 14-14-00626-CV, 2014 WL 6854747, at *10 (Tex. App.—Houston [14th Dist.] Dec. 4, 2014, no pet.) (mem. op.). The Department's caseworker testified that Mother completed "a few" of her services in this case and in Collin's case. There was no evidence presented as to whether Mother completed parenting classes. As mentioned above, Mother has lost custody of three other children within the past four years. Mother has not shown any improvement or change since the Department became involved in her life. On the other hand, the foster parents have a history of caring for children with down syndrome. The

caseworker testified that the foster parents "are providing medically, food, shelter, everything that the children need." This factor weighs in favor of the trial court's best-interest finding.

### 5. Plans for the children by those individuals or by the agency seeking custody

Texas courts recognize as a paramount consideration in the best-interest determination a child's need for permanence through the establishment of a stable, permanent home. *In re K.C.*, 219 S.W.3d 924, 931 (Tex. App.—Dallas 2007, no pet.). Mother has provided the Department with a copy of her lease and there was no evidence presented as to Mother lacking a permanent residence for her children. However, Mother failed to attend trial and there is no evidence as to how she intends to care for the twins or plans to address David's extensive medical needs. On the contrary, there is evidence that the foster parents plan to adopt the children and give them a permanent and stable home. The foster parents have shown they are invested in David's care by providing him with twenty-four-hour care and ensuring he attends all his medical appointments. This factor weighs in favor of termination.

Applying the applicable *Holley* factors to the evidence, we conclude that sufficient evidence supports the trial court's finding that termination of Mother's parental rights is in the children's best interest. *See In re L.D.A.*, No. 01-14-00782-CV, 2015 WL 293118 at *4 (Tex. App.—Houston [1st Dist.] Jan 22, 2015, no pet.) (mem. op.) (concluding termination of a mother's parental rights was in children's best interest where the children's medical needs were high, and the mother had a history of drug abuse).

11

## CONCLUSION

Having concluded the evidence is sufficient to support the trial court's finding that termination is in the twins' best interest, we conclude that the record evidence supports the trial court's judgment.

We affirm the judgment of the trial court.


/s/    Frances Bourliot
       Justice


Panel consists of Justices Christopher, Bourliot, and Zimmerer