

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

———————————————

## No. 07-19-00141-CV

———————————————

### IN THE INTEREST OF A.T.-W. AND A.T.-W., CHILDREN

On Appeal from the County Court at Law Number 1
Randall County, Texas
Trial Court No. 72,600-L1; Honorable James Anderson, Presiding

August 29, 2019

## MEMORANDUM OPINION

Before QUINN, CJ., and CAMPBELL and PIRTLE, JJ.

Appellant, S.T.-B.,[1] the natural mother of two children, A.T.-W. and A.T.-W., appeals the trial court's order terminating her parental rights to those children.[2] In a single issue, she asserts that the trial court erred in finding there was clear and convincing

---

[1] To protect the privacy of the parties involved, we refer to them by their initials. *See* TEX. FAM. CODE ANN. § 109.002(d) (West 2017). *See also* TEX. R. APP. P. 9.8(b).

[2] The children's father, G.W., was a party to the proceedings and his parental rights were also terminated. He has not appealed that determination.

evidence that it was in the best interest of the children to terminate her parental rights. We affirm the trial court's order.

### APPLICABLE LAW

The Texas Family Code permits a court to voluntarily terminate the relationship between a parent and a child if the Department of Family and Protective Services establishes that a parent has engaged in one or more of the twenty-one predicate acts or omissions enumerated under section 161.001(b)(1) of the Code and it finds that the termination of that relationship is in the best interest of the child. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(A)-(U), (b)(2) (West Supp. 2018).[3] *See also In re N.G.*, No. 18-0508, 2019 Tex. App. LEXIS 465, at *1 (Tex. 2019) (per curiam) (holding that while only one predicate finding under section 161.001(b)(1) is necessary, an appellate court may be required to review additional predicates where, as here, the trial court has based its ruling, in whole or in part, upon section 161.001(b)(1)(D) or (E)). In parental termination cases, due process mandates that the Department establish its case by a clear and convincing standard of proof. *In re N.G.*, 2019 Tex. App. LEXIS 465, at *7; § 161.206(a) (West 2014). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." § 101.007 (West 2014).

### BACKGROUND

In August 2017, A.T.-W. and A.T.-W., females ages five and six respectively, were in the custody of their mother, S.T.-B., and father, G.W. The Department received information that S.T.-B. and G.W. were using drugs in the presence of the children and

---

[3] For simplicity, we will cite provisions of the Texas Family Code throughout the remainder of this memorandum opinion simply as "section _____" or "§ _____."

that S.T.-B. was leaving the children with a grandmother who was living in a drug house. When the family was tested for illegal substances, S.T.-B. tested positive for cocaine as did the children, and G.W. tested positive for marijuana. The Department initiated a safety plan whereby the parents agreed that the children and G.W. would reside with the children's aunt in a drug-free environment apart from S.T.-B.

Upon learning that G.W. was not staying at the aunt's house and the children were in a drug house where they were exposed to crack cocaine, the Department filed its *Original Petition for Protection of a Child, for Conservatorship, and for Termination in Suit Affecting the Parent-Child Relationship* in September 2017. The *Petition* asserted S.T.-B. had violated multiple provisions of the Family Code that justified termination of her parental rights. § 161.001(b)(1)(A)-(F), (K), (M)-(Q). The children were removed and placed in foster care.

S.T.-B. entered into a family service plan that was adopted as part of a *Status Hearing Order* entered by the trial court.[4] Pursuant to the plan, S.T.-B. agreed to participate in and complete rational behavior therapy, notify the Department of any changes in address, maintain regular contact with her caseworker, maintain a drug-free lifestyle and abstain from the use of illegal drugs, submit to random drug tests, locate and maintain stable housing with functioning utilities, and participate in supervised visitation with the children one hour per week. She also agreed to complete individual counseling, parenting classes, a psychological evaluation, and a substance abuse evaluation.

---

[4] The trial court's order states "having reviewed the service plans filed by the Department, [the trial court] finds . . . that the service plans are reasonable, accurate, and in compliance with the previous orders of the Court."

At the final hearing, the State's evidence established that although S.T.-B. tested negative for drugs several times during the proceedings, from September 2017 through February 2019, she tested positive for cocaine eight times. When she and her newborn infant, Z.A., tested positive for cocaine in July 2018, Z.A. was removed and is the subject of another termination proceeding.[5] In May 2018, S.T.-B. was arrested for driving while intoxicated after striking a police car at 5:50 a.m. She was driving with a suspended license and had five outstanding warrants.

Although she did work on her service plan, she did not complete her rational behavior therapy, notify the Department of address changes, maintain a drug-free lifestyle and abstain from illegal drug use, or complete substance abuse counseling. Because S.T.-B. continued to test positive for drugs, her caseworker believed that she had not mitigated the reasons for the removal of the children. As a result, the caseworker believed that, if the children were returned to S.T.-B., they would be at risk of being exposed to further drug use by their mother or others who were a part of the household or visited the residence.[6] Further, despite the fact that S.T.-B. continued to test positive for cocaine after the initial removal and approximately a year later she and her newborn Z.A. tested positive as well, S.T.-B. continued to maintain that she did not do drugs and was uncertain why her children tested positive for cocaine.[7]

---

[5] Z.A. was fathered by D.A., S.T.-B.'s paramour since G.W. went to prison for drug-related offenses. D.A. also served time in prison for drug-related offenses.

[6] S.T.-B.'s individual counselor was concerned that if S.T.-B. were given custody of the children when she was unable to identify the source of the drugs despite that she and her children tested positive for cocaine, then she would not be capable of protecting the children from such exposure.

[7] In November 2018, her individual counselor recommended that future therapy be discontinued because of her continued denial of drug use despite positive drug screens and the inability to contribute therapeutically to the issues as a result of her belief that she is neither around nor using drugs. Although the counselor did three more sessions in January 2019 at S.T.-B.'s request, he testified that his opinion was unchanged at the conclusion of the three additional sessions.

The Department's caseworker testified that S.T.-B. posed a danger to her children's emotional and physical well-being because she continued to test positive for cocaine and was unaware or unable to identify the source that contaminated her children in the residence. As a result, having failed to mitigate the reasons for the children's removal, the caseworker opined that it was in the children's best interests that they remain in foster care where the children were in a stable, drug-free environment, doing well medically, and receiving consistent care.

When the final hearing was held, S.T.-B. was continuing to work nights as a cocktail waitress at a nightclub in Amarillo, Texas. She lived in a rent house with D.A., the father of Z.A. S.T.-B. testified that she would be leaving the nightclub and had a job waiting for her doing housework in a hotel. She also testified that she wanted to move to Lubbock to be with her father who said he was willing to take her and the children. Until she was able to get her driver's license, she and the children would take public transportation.

In March 2019, Associate Judge Jack M. Graham issued an order finding by clear and convincing evidence that the termination of S.T.-B.'s parental rights to A.T.-W. and A.T.-W. was warranted based on three predicate grounds: (1) section 161.001(b)(1)(D) (knowingly placed or allowed the children to remain in conditions or surroundings which endangered the physical or emotional well-being of the children); (2) section 161.001(b)(1)(E) (knowingly endangered the children's physical and emotional well-being); and (3) section 161.001(b)(1)(O) (failing to take specified actions necessary for return of the children). In addition, the trial court found that termination of the parent-child relationship was in the best interests of the children pursuant to section 161.001(b)(2). Thereafter, S.T.-B. requested a *de novo* hearing asserting the evidence was insufficient

to support a finding that dismissing her as a possessory conservator of A.T.-W. and A.T.-W. was in their best interests.

In March, the Honorable James Anderson granted S.T.-B.'s request for a *de novo* hearing and considered the entire record from the prior hearing. In April, he affirmed the order of the associate judge. On appeal, S.T.-B. contends that the trial court erred in finding there was clear and convincing evidence that it was in the children's best interests to terminate her parental rights. We disagree.

### STANDARD OF REVIEW

The natural right existing between parents and their children is of constitutional dimension. *See Santosky v. Kramer*, 455 U.S. 745, 758-759, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982). *See also Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). Consequently, termination proceedings are strictly construed in favor of the parent. *In re E.R.*, 385 S.W.3d 552, 563 (Tex. 2012). Parental rights, however, are not absolute, and it is essential that the emotional and physical interests of a child not be sacrificed merely to preserve those rights. *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002). Furthermore, when reversing a termination based on insufficient evidence, an appellate court must "detail the evidence relevant to the issue of parental termination and clearly state why the evidence is insufficient to support a termination finding by clear and convincing evidence." *In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014).

As previously stated, the Due Process Clause of the United States Constitution and the Texas Family Code require the application of a heightened standard of "clear and convincing evidence" in cases involving involuntary termination of parental rights. *See In re N.G.*, 2019 Tex. LEXIS 465, at *1 (citing *In re A.B.*, 437 S.W.3d at 502)). The Supreme

Court has recently determined that, when reviewing the sufficiency of the evidence to support a predicate ground for termination, due process requires an appellate court to review the sufficiency of proof under section 161.001(b)(1)(D) or (E), even when another ground is sufficient for termination due to the potential collateral consequences arising from the possible termination of parental rights as to a different child. *Id.* at *7-8. Because S.T.-B. does not contest any of the predicate grounds for termination under section 161.001(b)(1), we will limit our analysis to whether the evidence establishes that termination was in the best interests of the children according to a clear and convincing standard of proof. *See In re N.G.*, 2019 Tex. LEXIS 465, at *8.

### BEST INTEREST UNDER SECTION 161.001(b)(2)

As stated above, the Department is required to prove by clear and convincing evidence that termination of S.T.-B.'s parental rights was in the best interests of A.T.-W. and A.T.-W. *See* § 161.001(b)(2); *In re K.M.L.*, 443 S.W.,3d 101, 116 (Tex. 2014). Only if no reasonable fact finder could have formed a firm belief or conviction that termination of her parental rights was in the best interest of each child can we conclude the evidence to be insufficient. *Id.* (citing *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)).

In that regard, there is a strong presumption that the best interest of a child is served by preserving the parent-child relationship. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). Keeping that principle in mind, we must further acknowledge that prompt and permanent placement of a child in a safe environment is also presumed to be in that child's best interest. *See* § 263.307(a) (West Supp. 2018).

In order to access the trial court's best interest determination, we may consider any of the thirteen factors itemized in the non-exhaustive list of factors found in section

263.307(b). Similarly, the Supreme Court has set out other factors to consider when determining the best interest of a child. *See Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). Those factors include (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individual seeking custody; (5) the programs available to assist the individual or by the agency seeking custody; (6) the plans for the child by the individual or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one; (9) any explanation or excuse for the acts or omissions of the parent. Importantly, mere absence of evidence about some of these considerations does not preclude a fact finder from reasonably forming a firm belief or conviction that termination is in the best interest of a child, particularly if the evidence is undisputed that the parental relationship has endangered the safety of the child. *In re C.H.*, 89 S.W.3d at 27; *In re A.C.*, 394 S.W.3d 633, 642 (Tex. App.—Houston [1st Dist.] 2012, no pet.).

A best interest analysis may consider circumstantial evidence, subjective factors, and the totality of the evidence, as well as direct evidence. *See In re N.R.T.*, 338 S.W.3d 667, 677 (Tex. App.—Amarillo 2011, no pet.). Additionally, a child's need for permanence through the establishment of a "stable, permanent home" has been recognized as the paramount consideration in determining best interest. *See In re K.C.*, 219 S.W.3d 924, 931 (Tex. App.—Dallas 2007, no pet.).

### ANALYSIS

Applying the *Holley* factors to determine whether termination of S.T.-B.'s parental rights was in the best interests of A.T-W. and A.T.-W., we find the first factor, the desires

of the child, inapplicable because the children are too young to make a meaningful decision about their placement. When considering the second factor, the emotional and physical needs of the children now and the future, we find this factor favors the Department's position because S.T.-B. left her children in the care of persons who were using cocaine while S.T.-B. tested positive for cocaine throughout the proceedings with few exceptions. The third factor, the emotional and physical danger to the children now and in the future also weighs in favor of termination because S.T.-B. tested positive for cocaine use during the proceedings, denied using any drugs, and claimed that she could not identify the source that contaminated the children. The fourth factor, the parental abilities of the person seeking custody also weighs in favor of termination because S.T.-B. failed to demonstrate an ability to cease using cocaine or protect her children from the drug. When her children were initially removed, she and the children tested positive for cocaine. Almost a year later, when Z.A. was a newborn and the other children were in foster care, she and Z.A. both tested positive for cocaine.

Regarding the fifth factor, programs available to assist S.T.-B. in regaining custody, although there were many programs available to assist her to promote the best interests of the children, S.T.-B. attended important programs in the service plan sporadically and failed to complete several of them. The sixth factor, S.T.-B.'s plans for the children, also weighs in favor of termination because there was very little evidence at the final hearing that indicated she had any concrete plans for the children's future. As to the seventh factor, the suitability of the home or proposed placement, there was little evidence S.T.-B. had taken any concrete steps toward creating a protective, drug-free environment or stable, living environment for the children. Regarding the eighth factor, the acts or omissions of a parent indicating the lack of proper parent-child relationship, S.T.-B.'s

9

continued drug use and positive drug tests of her children indicate that the existing parent-child relationship was weak and improper and the prospect for an improved and healthy relationship was discouraging. Regarding the ninth factor, any excuse for the acts or omissions leading to the filing of the termination proceeding, S.T.-B. did not provide any evidence or viable explanation for her drug use or the positive drug tests of her children. Despite the many positive tests, she continued to assert that she did not use drugs and hypothesized that her children were contaminated by others.

On the other hand, since their removal, A.T.-W. and A.T.-W. have been living in a foster home that provides a safe and stable environment that is drug-free. All of their needs are being met by their foster parents. Accordingly, we find there was sufficient evidence to support the order issued by Judge Anderson finding that, under a clear and convincing evidence standard of proof, termination of S.T.-B.'s parental rights was in the best interests of A.T.-W. and A.T.-W. As such, we overrule her single issue.

### CONCLUSION

The trial court's order terminating S.T.-B.'s parental rights to A.T.-W. and A.T.-W. is affirmed.


Patrick A. Pirtle
Justice


10