**Opinion issued December 13, 2012**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-12-00223-CV

———————————

## IN THE INTEREST OF A.C., A CHILD

---

### On Appeal from the 313th Judicial District Court
### Harris County, Texas
### Trial Court Case No. 2010-05720J

---

## O P I N I O N

This is an appeal from the termination of the parental rights of a mother with respect to her daughter, A.C. *See* TEX. FAM. CODE ANN. § 161.001 (West Supp. 2012). On appeal, the mother contends that the evidence was legally and factually insufficient to support the termination of her parental rights and the naming of the Department of Family and Protective Services as sole managing conservator, rather

than the child's paternal grandmother. She also challenges two of the trial court's evidentiary rulings: the exclusion of evidence of alleged bias and prejudice of the Department and the ad litem attorneys in the case, and the admission of the testimony of an expert witness.

Because the evidence is sufficient to support the trial court's judgment, and the mother has failed to preserve error with respect to the evidentiary issues, we affirm.

## Background

When the mother was four months pregnant with A.C., she tested positive for cocaine use during a doctor's visit and first drew the attention of the Department. Two months later, the school that her three older children attended contacted the Department. The children appeared "dirty" and the Department became concerned about possible malnutrition, abuse, and neglect in the home. After unsuccessfully attempting to provide home-based services to the mother and the older children, the Department decided to remove the three children. At that time, the mother was approximately six months pregnant, and she again tested positive for drug use. After the removal of the three older children, the Department enrolled both of A.C.'s biological parents in a program to receive family support services so they could resolve certain identified issues and be reunited with the children.

When A.C. was born a few months later, both mother and child tested negative for drugs. But the Department began to investigate the mother again because she had tested positive for drugs during the pregnancy. The Department ultimately removed A.C., placing her with her paternal grandmother at the mother's request. Approximately three months later, after the guardian ad litem and attorney ad litem raised concerns about the lack of a complete home study on the placement, the child was moved to a foster home. The foster parents bonded with A.C., and by the time of the termination hearing they had formed a plan to adopt her.

After A.C.'s removal, the mother and the father tested positive for cocaine. While the child was still placed at her grandmother's home, the mother again tested positive for cocaine use. This positive test result came after she completed a family services substance abuse program. A few months later, the mother was sent to jail for violating her probation, which she had received for an earlier bank fraud charge, because she had tested positive for cocaine.

In March 2011, almost a year after A.C.'s birth, the mother's parental rights were terminated with respect to her three older children. That termination was based on the findings that the mother had knowingly placed the children in surroundings endangering their well-being under Texas Family Code section 161.001(1)(D), engaged in conduct endangering their well-being under

3

section 161.001(1)(E), and failed to comply with a court order establishing the actions she needed to undertake to achieve the children's return under section 161.001(1)(O). The Department notified the mother that it was seeking termination of her parental rights to A.C. A few months later, she again tested positive for cocaine abuse.

The jury made several findings based on clear and convincing evidence which supported termination of the parent-child relationship between the mother and A.C. The court adopted these findings and entered a final decree of termination. The mother then brought this timely appeal.

**Analysis**

**I.      Sufficiency of the evidence**

In her first and second issues, the mother challenges the legal sufficiency of the evidence supporting the judgment terminating her parental rights to the child and awarding sole managing conservatorship to the Department rather than to the child's paternal grandmother. In her brief, the mother also challenges the factual sufficiency of the evidence supporting the termination decision, but she did not timely file a motion for new trial. Because a motion for new trial is a prerequisite to a complaint on appeal that the evidence is factually insufficient to support a jury finding, her factual sufficiency complaint is waived. TEX. R. CIV. P. 324(b)(2).

Protection of the best interests of the child is the primary focus of the termination proceeding in the trial court and our appellate review. *See In re A.V.*, 113 S.W.3d 355, 361 (Tex. 2003). A parent's right to the care, custody, and control of her child is a precious liberty interest protected under the Constitution. *See, e.g., Troxel v. Granville*, 530 U.S. 57, 65, 120 S. Ct. 2054, 2060 (2000); *Santosky v. Kramer*, 455 U.S. 745, 758–59, 102 S. Ct. 1388, 1397 (1982). Accordingly, termination proceedings are strictly scrutinized on appeal. *See Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). Clear and convincing evidence must support the decision to terminate parental rights. *In re J.F.C.*, 96 S.W.3d 256, 263–64 (Tex. 2002); *see also Santosky*, 455 U.S. at 747–48, 102 S. Ct. at 1391–92.

Evidence is legally sufficient if it is "such that a factfinder could reasonably form a firm belief or conviction about the truth of the matter on which the State bears the burden of proof." *In re J.F.C.*, 96 S.W.3d at 265–66; *see* TEX. FAM. CODE ANN. § 101.007 (West 2008). We review "the evidence in the light most favorable to the judgment," meaning that we "must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *Id.* at 266. "If, after conducting its legal sufficiency review of the record evidence, a court determines that no reasonable factfinder could form a firm belief

5

or conviction that the matter that must be proven is true, then that court must conclude that the evidence is legally insufficient." *Id.*

## A. Termination of parental rights

In proceedings to terminate the parent-child relationship, the Department must establish that one or more of the acts or omissions listed in Family Code section 161.001(1) occurred and that termination is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001. Both elements must be established, and termination may not be based solely on the best interest of the child as determined by the trier of fact. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987). "Only one predicate finding under section 161.001(1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest." *In re A.V.*, 113 S.W.3d at 362.

Here the Department sought termination of the mother's parental rights on grounds of endangerment, *see* TEX. FAM. CODE ANN. § 161.001(1)(E), having had her parental rights to her other children terminated, *see id.* § 161.001(1)(M), constructive abandonment, *see id.* § 161.001(1)(N), failure to comply with a court order, *see id.* § 161.001(1)(O), and testing positive for substance abuse after completion of a substance abuse treatment program, *see id.* § 161.001(1)(P). In the termination order based on the jury verdict, the trial court expressly found that these five statutory provisions were met, termination was in the best interest of the

6

child, appointment of a parent or relative of the child as managing conservator would not be in the child's best interest, and appointment of the Department as sole managing conservator was in the child's best interest.

**1.      Predicate grounds for termination (§ 161.001(1))**

The evidence the Department presented was sufficient to support the finding that one or more of predicate acts listed in section 161.001(1) had occurred. *See In re A.V.*, 113 S.W.3d at 362.  The Department introduced evidence supporting several predicate acts.

*a. Prior termination decree (§ 161.001(1)(M))*

To establish the ground for termination described in section 161.001(1)(M), the Department offered into evidence the decree terminating the mother's parent-child relationship with her other children.  Paragraph (M) applies when the parent "had his or her parent-child relationship terminated with respect to another child based on a finding that the parent's conduct was in violation of Paragraph (D) or (E)."  TEX. FAM. CODE ANN. § 161.001(1)(M).  The prior termination decree in this case contained a finding that the mother had endangered her children both by placing them in unsafe conditions under section 161.001(1)(D) and by engaging in endangering conduct under section 161.001(1)(E).

The mother challenges whether this decree could be used to prove a prior termination because the decree, and therefore the termination, was on appeal and

7

thus not necessarily final. The prior decree stated that "this case is not final until [the trial court's] plenary jurisdiction from this final judgment expires, and all appeals, if any, have concluded." While acknowledging that the "case" was not final and accordingly maintaining the appointment of the attorneys ad litem and the guardian ad litem, the decree reiterated that "this judgment is final." But finality, in the sense of a complete exhaustion or waiver of all possible appellate remedies, is not expressly required by the text of the statute. *See* TEX. FAM. CODE ANN. § 161.001(1)(M).

The mother's appeal of the prior termination decree did not suspend the effect of that decree. TEX. FAM. CODE ANN. § 109.002(c) (West Supp. 2012) ("An appeal from a final order, with or without a supersedeas bond, does not suspend the order unless suspension is ordered by the court rendering the order."); *see* TEX. R. APP. P. 24.2(a)(4) ("When the judgment involves the conservatorship or custody of a minor . . . enforcement of the judgment will not be suspended"). The mother did not establish and does not argue that the prior decree at issue in this case was ever suspended. In other words, the prior termination decree effectively terminated her parent-child relationship at and as of the time of the trial, despite the fact that the order was still subject to review on appeal. *Cf. Street v. Honorable Second Court of Appeals*, 756 S.W.2d 299, 302 (Tex. 1988) (acknowledging that "a trial court

8

judgment is final for the purposes of issue preclusion or collateral estoppel despite the pendency of an appeal").

The trial court admitted into evidence a prior decree that ordered termination of the mother's rights for reasons of endangerment under subsections (D) and (E). Just as a trial court's judgment is effective for purposes of precluding relitigation between the same parties on the same issues, the judgment is also effective for the purpose of presenting evidence to the factfinder of a prior termination. We hold that the statute requires no greater finality than this, and accordingly there was legally sufficient evidence to show that the mother had her rights terminated as to other children for purposes of section 161.001(1)(M).

### b. *Endangerment of the child (§ 161.001(1)(E))*

Additionally, the Department presented evidence that the mother's conduct during pregnancy and after the child's birth met the requirements of several other predicate acts under the Family Code. The mother admitted that she had used cocaine during her pregnancy with the child, and that she did so even though she knew that she could have harmed the child by taking drugs. She admitted she tested positive for cocaine again after the child was removed from her care. She admitted using cocaine after completing a court-ordered substance abuse treatment program. The mother also admitted to failing to complete her court-ordered parenting classes because she had tested positive for drug use while on deferred

9

adjudication and jailed for 85 days. After she was released from jail, she again tested positive for drug use. The mother admitted that her continued drug problems put the child at risk and that she had engaged in conduct harmful to the child.

The evidence of the mother's continuing use of illegal drugs and admission that such use put the child at risk supports the conclusion that the mother had engaged in conduct that endangered the physical and emotional well-being of the child. *See* TEX. FAM. CODE ANN. § 161.001(1)(E). As the Supreme Court of Texas has noted, a parent's use of narcotics and its effect on his or her ability to parent may qualify as an endangering course of conduct. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009). The mother's continued illegal drug use, combined with the fact that such use violated both her court-ordered reunification plan and the terms of her deferred adjudication from an earlier conviction, established clear and convincing proof of deliberate conduct that endangered the well-being of her child. *See Robinson v. Texas Dep't of Family & Protective Servs.*, 89 S.W.3d 679, 686–87 (Tex. App.—Houston [1st Dist.] 2002, no pet.).

Having considered all of this evidence, we conclude the evidence is sufficient to form a firm belief in the minds of the jurors that the mother committed at least one of the predicate acts justifying termination as listed in the Family Code.

10

### 2. Best interest findings (§ 161.001(2))

In determining whether termination of the mother's parental rights was in the child's best interest, we consider numerous factors, including (1) the child's desires, (2) the current and future physical and emotional needs of the child, (3) the current and future physical danger to the child, (4) the parental abilities of the person seeking custody, (5) whether programs are available to assist the person seeking custody in promoting the best interests of the child, (6) plans for the child by the person seeking custody, (7) stability of the home, (8) acts or omissions of the parent that may indicate that the parent-child relationship is not proper, and (9) any excuse for acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). There is no requirement that the Department prove all these factors as a condition precedent to parental termination, and the absence of evidence about some factors does not preclude a factfinder from reasonably forming a strong conviction that termination is in the child's best interest. *See In re C.H.*, 89 S.W.3d at 27.

The *Holley* factors are not necessarily the only considerations relevant to determining the best interest of the child. "[T]he prompt and permanent placement of the child in a safe environment is presumed to be in the child's best interest." TEX. FAM. CODE ANN. § 263.307(a) (West 2008). In determining whether a parent is willing and able to provide a safe environment, we consider several factors,

including (1) the child's and vulnerabilities; (2) developmental evaluations of the child's parents, other family members, and others who have access to the child's home; (3) whether there is a history of substance abuse by the child's family or others who have access to the child's home; (4) willingness and ability of the child's family to seek, accept, and complete counseling services and cooperate with agency supervision; (5) the willingness and ability of the child's family to effect positive changes within a reasonable period of time; and (6) whether the child's family demonstrates adequate parenting skills. *Id.* § 263.307(b). Evidence establishing one of the predicate acts under section 161.001(1) also may be relevant to determining the best interest of the child. *See In re C.H.*, 89 S.W.3d at 27-28.

There is strong evidence in this case that the mother regularly used illegal drugs both during her pregnancy with the child and after undergoing a treatment program. *See Robinson*, 89 S.W.3d at 688–89 (considering a similar pattern of drug use as favoring termination as being in the best interest of children). This pattern of illegal drug use suggests the mother was not willing and able to provide the child with a safe environment—a primary consideration in determining the child's best interest. *See* TEX. FAM. CODE ANN. § 263.307. The mother admitted she had used drugs during her pregnancy even though she knew it might harm the child. She tested positive for drugs the month after the child was removed. And

she used drugs even though that violated the conditions of her probation, resulting in her going to jail, away from the child. *See id.* § 263.307(b)(8) (considering whether the child's family has a history of substance abuse). This evidence weighs against the mother under the third and eighth *Holley* factors focusing on physical danger to the child and any actions indicating an improper parent-child relationship.

The fifth *Holley* factor considering the availability of programs for the mother also weighs against the mother. She completed parts of the Department's family services plan, but she continued to use drugs and never completed the entire program. *See id.* § 263.307(b)(10) (considering willingness and ability of family to complete counseling services); *Robinson*, 89 S.W.3d at 688–89 (termination in children's best interest when mother continued to use drugs and left ameliorative family support programs incomplete). The mother admitted at trial that after she got out of jail for violating her deferred adjudication provisions, she did not resume participating in either family service programs or a twelve-step program, explaining that she had not wanted to ask for time off from work in the months immediately following her release. This excuse may justify failing to resume the family services for a short time under the ninth *Holley* factor, but it does not justify failing to participate in any counseling program at all after leaving jail.

Beyond drug use, the evidence also establishes that the mother experienced difficulties in providing the child with a safe environment, disfavoring the mother under the seventh *Holley* factor, which considers the stability of the home. *See In re C.H.*, 89 S.W.3d at 28 (weighing evidence that a parent had a criminal history involving drugs, no concrete plans to provide support, and remaining apart from children in favor of finding that termination was in children's best interest). The mother took the child to Florida immediately after her birth, making it difficult for the Department to locate her and provide services. *See* TEX. FAM. CODE ANN. § 263.307(b)(10) (considering willingness to cooperate with and facilitate agency's close supervision). Both the mother and the father were homeless or living out of a motel until about a month before the termination trial. The mother continued to stay with the father, who she admitted had a drinking problem and a history of criminal convictions. *See id.* § 263.307(b)(8) (considering "whether there is a history of substance abuse by the child's family or others who have access to the child's home").

In contrast, the evidence presented about the foster parents seeking custody showed them as stable and caring, favoring them under the second and seventh *Holley* factors that consider the needs of the child and the stability of the home. The foster parents provided continuous care to the child from her placement with them until the time of trial. The home environment with the foster parents was

14

shown to be a nurturing one.  The Department observed the child was healthy and had current vaccinations and dental check-ups.  The child had called the foster parents' parents "maw-maw" and "paw-paw" and played with the foster family's young relatives, showing that the foster parents were attempting to meet the emotional needs of the child.

The Department also presented evidence favoring the foster parents under the sixth *Holley* factor considering the custodians' plans for the child.  The foster parents intended to adopt A.C. and to keep her in the family.  The foster father stated that he would want the child to know her paternal grandmother because he believes family should stay in touch.

We conclude that the evidence presented was sufficiently clear and convincing to support a fixed belief that termination of the mother's rights would be in the best interests of the child.  The Department presented evidence that the mother's conduct had placed the child in physical danger, undermined her parenting skills and the availability of family services, and indicated an improper parent-child relationship under the third, fourth, fifth, and eighth *Holley* factors.  No factor weighed in the mother's favor.  The young age of the child rendered consideration of the child's desires neutral.  On the other hand, the evidence presented about the foster parents showed that they were meeting the child's needs,

had positive plans for the child, and provided a stable home under the second, sixth, and seventh *Holley* factors.

Accordingly, we overrule the mother's challenges to the sufficiency of the evidence to support termination.

## B.    Conservatorship of the child

The mother also challenges the sufficiency of the evidence to support the finding that appointment of the Department as managing conservator of A.C. is in her best interest. The mother acknowledged at trial that she did not request to be appointed the child's managing conservator, but she argues that the child's paternal grandmother should have been appointed. The mother essentially argues that the appointment of "blood kin" conservators serves the child's best interest more than unrelated conservators.

We review the trial court's conservatorship decision under a less stringent standard of review than the standard for termination. *In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007). Conservatorship determinations are subject to review only for abuse of discretion, and they may be reversed only if the decision is arbitrary and unreasonable. *Id.*; *In re K.R.P.*, 80 S.W.3d 669, 674 (Tex. App.—Houston [1st Dist.] 2002, pet. denied). "Jury findings underlying a conservatorship appointment are subject to ordinary legal and factual sufficiency review." *J.A.J.*, 243 S.W.3d at 616 n.5.

Family Code section 161.207 directs the court to appoint a suitable, competent adult, the Department, a licensed-child placing agency, or an authorized agency as managing conservator of the child. TEX. FAM. CODE ANN. § 161.207 (West 2008). In contrast to the presumption of appointment given to a child's parents, *see id.* § 153.131, there is no statutory presumption that a grandparent should be preferred over other non-parents. *See* TEX. FAM. CODE ANN. § 161.207; *In re J.R.P.*, 55 S.W.3d 147, 152 (Tex. App.—Corpus Christi 2001, pet. denied); *In re H.G.H.*, No. 14-06-00137-CV, 2007 WL 174371, at *9-10 (Tex. App.— Houston [14th Dist.] Jan. 25, 2007, no pet.) (memo op.).

The primary consideration in determining conservatorship is always the best interest of the child. TEX. FAM. CODE ANN. § 153.002. In determining that appointment of a party as managing conservator is in the child's best interest, the court must consider both the section 263.307 factors and the *Holley* factors described above. *Dep't of Family & Protective Servs. v. Alternatives in Motion*, 210 S.W.2d 794, 804 (Tex. App.—Houston [1st Dist.] 2006, pet. denied). Applying those factors, there was sufficient evidence supporting the jury's finding that appointment of the Department is in the best interest of the child.

Although the child has noted respiratory problems, the paternal grandmother and her partner smoke in their house and the smell of smoke was found on the child's clothing. *See* TEX. FAM. CODE ANN. § 263.307(b)(1) (noting the child's age

17

and physical vulnerabilities should be considered in determining a safe environment for the child). The harm that smoking may cause to a child with a respiratory problem weighs against the grandmother under the second and third *Holley* factors, which require consideration of the needs of the child and physical danger to the child. Additionally, there was evidence presented that the grandmother would allow the mother and the child's father to stay and visit, despite their history of alcohol and drug abuse and multiple criminal charges against the father. *See id.* § 263.307(b)(8). The grandmother also could have been determined to have not been properly protective of the child as she did not seem to understand the full extent of the mother's and father's drug use. This evidence suggests an improper parent-child relationship under the eighth *Holley* factor.

Compared to the evidence that the foster parents had provided a stable and healthy environment for the child with access to a supportive extended family, *see id.* § 263.307(b)(13) (considering whether there is a "social support system consisting of an extended family and friends" for the child), there is sufficient evidence supporting the jury's determination to name the Department as sole managing conservator. The Department presented evidence under the *Holley* factors that conservatorship by the grandmother would not be in the child's best interest. We therefore overrule the mother's second issue.

## II. Evidentiary issues

## A. Exclusion of evidence of systemic bias and prejudice

In her third issue, the mother alleges that the trial court erred by excluding "relevant evidence of bias and corruption . . . presented for consideration by the jury" when the court denied her "the right to make a timely proffer." Rule 103(b) of the Rules of Evidence provides that the "offering party shall, as soon as practicable, but before the court's charge is read to the jury, be allowed to make, in the absence of the jury, its offer of proof." TEX. R. EVID. 103(b). The trial court expressly told the mother, before the charge was read, to make her offer of proof "whenever" she wished. The mother failed to timely act on this invitation, and instead she offered her proof after the charge was read to the jury. Therefore, we have no basis to review her third issue and we hold that the mother has waived any error in regard to it. *See Lewis v. United Parcel Serv., Inc.*, 175 S.W.3d 811, 815 (Tex. App.—Houston [1st Dist.] 2004, pet. denied).

## B. Admission of expert witness testimony

In her fourth and final issue, the mother challenges the testimony of a former Department employee who had testified in the mother's previous termination proceeding, Lisa McCartney, as a qualified expert witness. The mother has not preserved this complaint through a timely objection, which would have required a timely and specific objection followed by an adverse ruling. TEX. R. APP. P. 33.1;

19

*see Austin v. Weems*, 337 S.W.3d 415, 423–24 (Tex. App.—Houston [1st Dist.] 2011, no pet.). If a party later permits the same or similar evidence to be introduced without objection, generally the error in the admission of testimony is harmless and is waived. *Volkswagen of America, Inc. v. Ramirez*, 159 S.W.3d 897, 907 (Tex. 2004). But if the party obtains a running objection, the party need not object every time the evidence is offered. *Id.*

Here the record shows that the mother failed to preserve error. She failed to obtain a running objection or to object when McCartney took the stand. After voir dire of the jury panel, the trial court had the following dialogue with the mother's attorney regarding McCartney's testimony:

> MOTHER'S ATTORNEY: Because it is a new trial, I think I need to reurge my objection to Ms. McCartney being an expert. So, I don't know if you want to carry the Daubert hearing over [from the previous termination trial]. How do you want to do it?
>
> . . .
>
> THE COURT: I don't want Ms. McCartney to take the stand and there be a bunch of objections about qualifications and expertise. And I am willing to attach the previous records. If that's agreeable to the parties, I will attach it.
>
> MOTHER'S ATTORNEY: Yes, sir. That's fine.
>
> THE COURT: The Court is finding Ms. McCartney is an expert, and that she is going to be allowed to remain in the courtroom as the expert, and to testify as an expert, but I will attach the previous testimony and your objection and all of the cross and everything to the record in this new trial.

> MOTHER'S ATTORNEY:  And, Judge, just for the record, I believe to preserve the error for appeal that when it comes time for her to-
>
> THE COURT:  You can make another objection all over.
>
> MOTHER'S ATTORNEY:  I have to make it, once, to her being an expert.

The end of the discussion indicates that counsel for the mother had understood that she had not obtained a running objection.  The mother's attorney positively acknowledged that she needed to make another objection to McCartney's testimony to preserve error.  Then when McCartney took the stand, the mother failed to object to the admissibility of her testimony as inadmissible or her qualification as an expert.   Thus, the mother waived her objection to McCartney's testimony as an expert witness.  *See* TEX. R. APP. P. 33.1.

### Conclusion

In sum, we conclude that the Department presented sufficient evidence to support the jury's findings and the verdict terminating the parent-child relationship and awarding sole conservatorship to the Department.  The mother has waived her other complaints.  Accordingly, we affirm the judgment of the trial court.

Michael Massengale
Justice

Panel consists of Justices Keyes, Massengale, and Brown.