

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-20-00278-CV

---

### IN THE INTEREST OF B.J.B. AND J.D.D., CHILDREN

---

On Appeal from the 31st District Court
Lipscomb County, Texas
Trial Court No. 19-10-4820, Honorable Jack M. Graham, Presiding

---

April 9, 2021

## MEMORANDUM OPINION

Before QUINN, C.J., and PIRTLE and DOSS, JJ.

Appellant, A.T. (the mother), appeals from the trial court's order terminating her parental rights to her children, B.J.B. and J.D.D.[1] Appellee is the Texas Department of Family and Protective Services. A.T. does not challenge whether there was sufficient evidence to terminate her parental rights pursuant to section 161.001(b)(1)(D), (E), (N), and (O) of the Texas Family Code. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (N), (O) (West Supp. 2020).[2] Instead,

---

[1] To protect the parties' privacy, we refer to Appellant and her children by initials. *See* TEX. FAM. CODE ANN. § 109.002(d) (West Supp. 2020); TEX. R. APP. P. 9.8(b). C.B., B.J.B.'s father, was named permanent possessory conservator of B.J.B. J.D.D.'s father, J.D., had his parental rights terminated. Neither appealed.

[2] Throughout the remainder of this Memorandum Opinion, provisions of the Texas Family Code will be cited as "§ __" and "section ___."

she contends the trial court erred in determining there was legally and factually sufficient evidence that termination of her parental rights was in the best interest of B.J.B. and J.D.D. We affirm the trial court's order.

## Background

The evidence at the final hearing established that on September 18, 2019, the Department received a report of neglectful supervision involving drug use and unhealthy living conditions. The next day, an investigator observed a cluttered yard and broken glass in the driveway of the residence. Halfway to the front door, the investigator noticed the smell of garbage and urine. B.J.B., a three-and-one-half-year-old child, answered the front door with dirt on his face and clothing.

B.J.B. invited the investigator inside, where she found the floors covered with feces and the carpets stained. Trash bags were strewn and stacked throughout the house. In addition, spoiled food was found throughout the house, dirty clothing covered the utility room floor, and J.D.D., a four-month-old child, was sleeping on a dirty mattress in the living room with B.J.B. and A.T. The home had no hot water; the gas had been disconnected. The children were malnourished. J.D.D. suffered an inflamed rash under his chin.

A.T. and her roommate claimed A.T.'s brother left the house in its present condition when he moved out seven months earlier. She and her roommate denied using drugs and agreed to be tested. A.T. asserted the children were never left without her supervision.

The investigator created a detailed list of tasks for A.T. to complete to make the home livable and safe for the children. The investigator also provided a lock for the front door to prevent B.J.B. from wandering out, as well as a pack and play for J.D.D. to sleep in. A.T.'s mother arrived, agreed the house was in poor shape, and indicated she would get someone to bring a trailer to

2

haul the trash off. The investigator informed A.T. that she would be waiting for the drug screens to be completed and would randomly appear to check on the progress of the clean-up.

On September 30, the drug-screen results for A.T. and her roommate reported positive for the presence of methamphetamine. The same day, Jana Byard, a caseworker, visited the home. When she arrived, the smell of trash and urine could still be detected from the front yard. When A.T. answered the door, she indicated that J.D., J.D.D.'s father, had been released early from jail and had returned. Byard found the living conditions had worsened since the previous visit 12 days earlier. In addition to the previous problems, she also observed empty beer containers strewn throughout the house and more loose trash on the floors. J.D.D. was covered with a dirty blanket and B.J.B.'s clothing was smeared with dirt. When confronted with her positive drug screen, A.T. denied that she used any drugs. When it became apparent there were no suitable persons capable of or willing to supervise the children, the Department removed the children on an emergency basis and filed its *Original Petition* on October 1, 2019. Both children were placed in a foster home.

Sharlotte Watson, a child support service specialist, testified A.T.'s court-ordered service plan required that A.T. attend parenting classes and individual counseling, complete psychosocial and drug/alcohol assessments, submit to random drug testing, obtain stable employment, and obtain stable housing. During the proceedings, A.T. and J.D. continued living together and moved several times. A.T. did not complete any of her services and failed to submit to random drug testing. When she submitted to a court-ordered drug test at a hearing in July 2020, her results were again positive for methamphetamine.[3]

---

[3] Due to A.T.'s failure to submit to scheduled drug testing, the trial court ordered a cessation in visitations with the boys until such time as she submitted a negative drug test. A.T. never submitted a negative drug test, so visitations were never resumed.

Byard testified that in the more than six months the children were living in their foster home, they bonded with their foster parents. Initially, B.J.B. had some "disturbing" behaviors after removal, including temper tantrums accompanied by screaming and cursing. However, B.J.B.'s behavior improved after about a month and when he regularly worked with a therapist. The foster parents also demonstrated improvement in the children's physical health; evidence showed the foster parents were meeting all the children's needs and that the children were thriving. Permanent placement for the boys had been discussed with the foster parents.

Byard testified that it was in the children's best interests that A.T.'s parental rights be terminated. Thereafter, the trial court signed an order of termination finding by clear and convincing evidence that termination of A.T.'s parental rights to both children was warranted under section 161.001(b)(1)(D), (E), (N), and (O), and that termination of A.T.'s parental rights was in the children's best interest.

## Analysis

To terminate parental rights pursuant to section 161.001, the Department has the burden to prove by clear and convincing evidence of the following: (1) satisfaction of at least one of the predicate grounds in section 161.001(b); and (2) that termination is in the best interest of the child. *See* §§ 161.001(b), 161.206(a); *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). "'Clear and convincing evidence' means the measure of degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." § 101.007.[4]

---

[4] This intermediate standard falls between the preponderance standard of ordinary civil proceedings and the reasonable doubt standard in criminal proceedings. *In re D.T.*, 34 S.W.3d 625, 630 (Tex. App.—Fort Worth 2000, pet. denied). While the State's proof must weigh heavier than merely the greater weight of the credible evidence, there is no requirement that the evidence be unequivocal or undisputed. *State v. Addington*, 588 S.W.2d 569, 570 (Tex. 1979).

In this case, the trial court found evidence of four predicate grounds supporting termination of A.T.'s parental rights and that termination of her rights was in the children's best interest. A.T. contends the evidence is legally and factually insufficient to support the trial court's finding that termination is in the children's best interests. We disagree, and affirm the order of the trial court.

Standard of Review

In reviewing the legal sufficiency of the evidence to support the trial court's findings, we look "at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding is true." *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009) (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)). We give appropriate deference to the factfinder's conclusions and the role of the trial court by "assum[ing] that the factfinder resolved disputed facts in favor of the finding if a reasonable factfinder could do so." *Id.* "A corollary to this requirement is that [we] should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *Id.* If, after conducting our legal sufficiency review of the record evidence, we determine that no reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true, then we must conclude that the evidence is legally insufficient. *Id.* at 344-45.

In reviewing the factual sufficiency of the evidence, we give deference to the fact finder's findings, but also consider the disputed or conflicting evidence. *Id.* at 345. "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *In re*

5

*J.F.C.*, 96 S.W.3d at 266.  In conducting a factual sufficiency review, we cannot substitute our judgment for that of the factfinder*.  In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006).

Along with a best interest finding, a finding of only one statutory ground under section 161.001(b)(1) is sufficient to support a judgment of termination.  *In re A.V.*, 113 S.W.3d at 362.  Here, A.T. does not challenge any statutory ground relied on by the trial court in ordering the termination of her parental rights pursuant to section 161.001(b)(1)(D), (E).[5]  We thus review the trial court's best interest findings for legal and factual sufficiency.

The Department is required to prove by clear and convincing evidence that termination of A.T.'s parental rights is in the children's best interests.  *See* § 161.001(b)(2); *In re K.M.L.*, 443 S.W.3d 101, 116 (Tex. 2014).  There is a strong presumption that the best interest of a child will be served by preserving the parent-child relationship.  *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006).  However, the presumption is not irrebuttable; the Texas Family Code and Supreme Court of Texas provide additional factors for assessing the best interest of a child.  *See* § 263.307; *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976).[6]  The absence of evidence about some of these

---

[5] Pursuant to the Texas Supreme Court's opinion *In re N.G.*, 577 S.W.3d 230 (Tex. 2019), we generally review the trial court's findings under predicate grounds section 161.001(D) and (E) when challenged.  This is so because of the potential future consequences to a parent's parental rights concerning a different child.  *Id.* at 235-37.  Having considered all the evidence including A.T.'s use of methamphetamines before and after removal, and the children's living environment before removal, A.T.'s subsequent failure to undergo drug testing and/or treatment during the termination proceedings is sufficient evidence establishing A.T. violated section 161.001 (D) and (E).  *See In re A.F.J.*, 576 S.W.3d 753, 751 (Tex. App.—El Paso 2019, pet. denied) ("evidence that the parent continued to use illegal drugs even though the parent knew her parental rights were in jeopardy is conduct showing a voluntary, deliberate, and conscious course of conduct, which by its nature, endangers a child's well-being").

[6] The *Holley* factors include: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individual seeking custody; (5) the programs available to assist the individual to

considerations would not preclude a factfinder from reasonably forming a strong conviction or belief that termination is in the child's best interest, particularly if the evidence is undisputed that the parental relationship endangered the safety of the child. *In re C.H.*, 89 S.W.3d at 27; *In re A.C.*, 394 S.W.3d 633, 642 (Tex. App.—Houston [1st Dist.] 2012, no pet.).

In addition to the foregoing factors, evidence that supports one or more statutory grounds for termination may also constitute evidence demonstrating that termination of parental rights is in the children's best interests. *See In re C.H.*, 89 S.W.3d at 28. *See also In re E.C.R.*, 402 S.W.3d 239, 249-50 (Tex. 2013). A child's need for permanence through the establishment of a "stable, permanent home" has been recognized as the paramount consideration in determining best interest. *See In re K.C.*, 219 S.W.3d 924, 931 (Tex. App.—Dallas 2007, no pet.). In making our determination, we may consider "circumstantial evidence, subjective factors, and the totality of the evidence as well as the direct evidence." *See In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied). We may likewise measure a parent's future conduct by his or her past conduct when assessing the evidence of whether termination of parental rights is in the child's best interest. *Id. See In re D.J.H.*, 381 S.W.3d 606, 613 (Tex. App.—San Antonio 2012, no pet.) ("A fact-finder may infer from past conduct endangering the well-being of a child that similar conduct will recur if the child is returned to the parent.").

---

promote the best interest of the child; (6) the plans for the child by the individual or agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley*, 544 S.W.2d at 371-72.

In this case, the evidence strongly favors the trial court's finding that termination is in the best interest of the children. The record shows each of the following to support an inference of adverse effect on the children: (1) A.T.'s positive test for methamphetamine at removal; (2) A.T.'s continued drug use during the pending termination proceedings; (3) A.T.'s inability to provide a healthy, safe home environment for the children; (4) her failure to attend parenting classes, individual counseling, and psychological or drug/alcohol assessments; (5) her failure to complete any of the services in her court-ordered plan, (6) her failure to appear for required drug tests; and (7) A.T.'s decision to discontinue visitations with her children.

After their removal, the evidence shows the children lived with their foster parents for more than a year in a stable home that is drug-free. The children have bonded with their foster parents and call them "mother" and "father." With the assistance of regular therapy sessions, the foster parents have been able to ameliorate B.J.B.'s behavioral problems and address the children's physical issues/malnutrition that existed at removal. The children's caseworker describes them as thriving in their foster placement; their foster parents have expressed a desire for permanent placement of either or both boys.

Having reviewed the record and considered the evidence in the appropriate light for each standard of review, we conclude the trial court could have formed a firm belief or conviction that termination of A.T.'s parental rights was in the children's best interests. *See In re S.B.*, 207 S.W.3d 877, 887-88 (Tex. App.—Fort Worth 2006, no pet.) (considering the parent's drug use, inability to provide a stable home, and failure to comply with a family service plan in holding the evidence supported the best-interest finding).

## Conclusion

We affirm the trial court's order terminating A.T.'s parental rights.


Lawrence M. Doss
Justice