

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-23-00031-CV
_____


IN THE INTEREST OF D.M.-H., A CHILD



On Appeal from the County Court at Law
Lamar County, Texas
Trial Court No. 91212



Before Stevens, C.J., van Cleef and Rambin, JJ.
Opinion by Justice Rambin

O P I N I O N

Following a bench trial in a suit brought by the Texas Department of Family and Protective Services, the trial court terminated Mother's parental rights to D.M.-H.[1] pursuant to grounds (I), (M), (N), and (O) of the Texas Family Code. *See* TEX. FAM. CODE ANN. § 161.001(b)(1) (I), (M), (N), (O). The trial court also found that termination was in D.M.-H.'s best interests. *See* TEX. FAM. CODE ANN. § 161.001(b)(2). On appeal, Mother argues that the evidence was legally and factually insufficient to support termination.

We affirm the trial court's order because we find that the trial court's ground (M) finding was supported by legally and factually sufficient evidence.

## I.      Background

Tiffany Massey, an investigator for the Department, received a request from the hospital following D.M.-H.'s birth in July 2022 to check on Mother and D.M.-H. When Massey arrived, Mother had been discharged, although D.M.-H. remained in the hospital. Later, Mother returned to the hospital, and Massey visited with her. Mother complained to Massey that, before she was discharged, she was not permitted to have her child in her room. Massey stated that Mother, who was still wearing her hospital gown, was erratic and difficult to follow. Massey was concerned because Mother seemed like she was intoxicated. Based on Mother's erratic behavior and because Mother's rights to her first child had been terminated, Massey decided that it was in the

---

[1] To protect the child's identity, we refer to the appellant as Mother and to the child by initials. *See* TEX. R. APP. P. 9.8.

2

child's best interest to remove him from the hospital.[2] After D.M.-H.'s removal, the trial court issued an order, pursuant to Section 262.2015 of the Texas Family Code, finding that Mother subjected D.M.-H. to aggravated circumstances. *See* TEX. FAM. CODE ANN. § 262.2015 (Supp.).

Following the removal, Massey spoke with Mother on the phone a few times. Mother wanted to know why D.M.-H. had been removed. Conversely, Massey wanted to know why Mother did not follow through with drug testing after leaving the hospital as she had agreed to do. Mother denied using any illegal substances and informed Massey that she was appealing the termination of her parental rights to her first child.[3]

Brittany Allen, a conservatorship worker with Child Protective Services, was familiar with Mother and D.M.-H. and was the caseworker involved in Mother's previous termination case. Although Mother was ordered to comply with the Department's service plan, she failed to complete a psychological examination and a drug and alcohol assessment, as ordered by the court. Mother began a parenting class but failed to complete it. Mother did not pay child support, as ordered, and failed to provide any other kind of support for D.M.-H. Mother knew that she was required to complete her service plan if she wanted to be considered for reunification.

Mother was also required to submit to drug testing every month but did not submit to any drug testing throughout the course of the case. Allen offered to take Mother to her initial drug test, as ordered by the court on December 21, 2022, but Mother refused, stating that a friend

---

[2]The Department took emergency possession of D.M.-H. on July 12, 2022, pursuant to Section 262.104 of the Texas Family Code. *See* TEX. FAM. CODE ANN. § 262.104 (Supp.).

[3]Mother's parental rights to her first child were terminated approximately one month before D.M.-H.'s birth.

would take her.  As a result of her failure to submit a clean drug test, Mother was not permitted to visit D.M.-H. and, at the time of trial, had not seen him since the removal.

In her prior termination case, the only drug testing to which Mother submitted yielded positive results for the presence of illegal narcotics in Mother's system.  Given the fact that D.M.-H. was born approximately one month after the initial termination, the Department believed that it was likely that Mother was using drugs at least eight of the nine months of her pregnancy with D.M.-H.

Mother told Allen that, even if she were using drugs during her pregnancy, it would only affect her and not her child in utero.  Mother also believed that, even if she had a drug problem, it would not affect her ability to be a parent.  Although D.M.-H. suffered from severe withdrawal symptoms following his birth, he was doing very well at the time of trial.

In contrast to Allen's testimony, Mother testified that she completed the parenting class, received a certificate of completion for that class, and emailed a copy of the certificate to Allen.  When asked to clarify, Mother admitted that she did not email any certificates to Allen relating to this case.  In reference to her previous case, Mother testified that she attended counseling and advised Allen of her attendance.  She completed counseling in February or March 2022.  When D.M.-H.'s case was filed, Mother called to restart counseling but was told that she did not have a referral.  She called Allen to let her know that.  Mother stated that she completed the entirety of her service plan.

Mother testified that she was not informed by medical personnel that D.M.-H. tested positive for narcotics at birth.  Mother was aware of allegations of drug use, but she did not agree

4

to submit to a drug test. She submitted to a hair-follicle test in July 2021 in her first termination case and was advised by the caseworker that the test revealed "some kind of substance." Mother testified that, after the July 2021 drug test, she never submitted another drug test sample. Mother was aware that she was required to submit to random monthly drug tests but testified that, due to her work schedule at Campbell's Soup, she could not submit to drug testing. Mother testified, though, that she ceased working at Campbell's Soup in December 2021 or January 2022. Mother was also aware that failure to submit to a drug test amounted to a presumptive failure of the test. Mother testified, however, that, from the time of D.M.-H's birth until the time of trial, she had not used methamphetamine or ecstasy.[4]

At the time of trial, Mother was employed at a fast-food restaurant in Paris and had been so employed—off and on—since 2018. After having been evicted from her previous home, Mother lived with D.M.-H.'s father, whose rights to the child had previously been terminated. Mother and Father moved from their apartment to a different residence in January or February 2023, but Mother did not know the address of her then-current residence.

Allen testified that termination was in D.M.-H's best interests. In addition to her unwillingness to complete court-ordered services and drug testing, Mother experienced housing instability and could not provide shelter for D.M.-H. D.M.-H's placement had sufficient resources to care for him.

Chris Dorman, a Court Appointed Special Advocate volunteer, was appointed to oversee the case. Dorman visited with D.M.-H.'s caregivers on several occasions and reported that

---

[4]When asked to submit to a drug test after making that statement, Mother declined.

D.M.-H. and his sibling lived together in the same foster home. D.M.-H.'s foster home was well-kept and comfortable, with adequate space for two children. According to Dorman, the foster parents had done a good job taking care of D.M.-H. They were in the process of adopting D.M.-H's sibling, and they wanted to adopt D.M.-H. as well.

Dorman met with Mother early in the case at which time she indicated that "she didn't think that ecstasy and meth [were] any big deal[;] she needed it to chill down." Dorman knew that D.M.-H. was born with withdrawal symptoms, but those symptoms had subsided at the time of trial. Dorman testified that he believed termination was in D.M.-H's best interests.

## II. Standard of Review

"The natural right existing between parents and their children is of constitutional dimensions." *In re E.J.Z.*, 547 S.W.3d 339, 343 (Tex. App.—Texarkana 2018, no pet.) (quoting *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985)). "Indeed, parents have a fundamental right to make decisions concerning 'the care, custody, and control of their children.'" *Id.* (quoting *Troxel v. Granville*, 530 U.S. 57, 65 (2000)). "Because the termination of parental rights implicates fundamental interests, a higher standard of proof—clear and convincing evidence—is required at trial." *Id.* (quoting *In re A.B.*, 437 S.W.3d 498, 502 (Tex. 2014)). "'Clear and convincing evidence' is that 'degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established.'" *Id.* (quoting TEX. FAM. CODE ANN. § 101.007)). "This standard of proof necessarily affects our review of the evidence." *Id.* "This Court is therefore required to 'engage in an exacting review of the entire record to determine if the evidence is . . . sufficient to support the termination of parental rights.'" *In re*

*L.E.S.*, 471 S.W.3d 915, 919–20 (Tex. App.—Texarkana 2015, no pet.) (quoting *In re A.B.*, 437 S.W.3d at 500). "[I]nvoluntary termination statutes are strictly construed in favor of the parent." *Id.* at 920 (alteration in original) (quoting *In re S.K.A.*, 236 S.W.3d 875, 900 (Tex. App.—Texarkana 2007, pet. denied)).

"In our review of factual sufficiency, we give due consideration to evidence the trial court could have reasonably found to be clear and convincing." *Id.* (citing *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (per curiam)). "We consider only that evidence the fact-finder reasonably could have found to be clear and convincing and determine '"whether the evidence is such that a fact[-]finder could reasonably form a firm belief or conviction about the truth of the . . . allegations."'" *Id.* (alteration in original) (quoting *In re H.R.M.*, 209 S.W.3d at 108). "If, in light of the entire record, the disputed evidence that a reasonable fact[-]finder could not have credited in favor of the finding is so significant that a fact[-]finder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.* (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)).

"In our legal sufficiency review, we consider all the evidence in the light most favorable to the findings to determine whether the fact-finder reasonably could have formed a firm belief or conviction that the grounds for termination were proven." *Id.* (citing *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (per curiam); *In re J.L.B.*, 349 S.W.3d 836, 846 (Tex. App.—Texarkana 2011, no pet.)). "We assume the trial court, acting as fact-finder, resolved disputed facts in favor of the finding, if a reasonable fact-finder could do so, and disregarded evidence that the fact-

finder could have reasonably disbelieved or the credibility of which reasonably could be doubted." *Id.* (citing *In re J.P.B.*, 180 S.W.3d at 573).

### III. Sufficient Evidence Supports the Ground (M) Predicate Finding

"Only one predicate finding under Section 161.001[b](1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest." *In re O.R.F.*, 417 S.W.3d 24, 37 (Tex. App.—Texarkana 2013, pet. denied) (quoting *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003)). Here, we determine whether the evidence is legally and factually sufficient to support the trial court's ground (M) predicate finding.

Ground (M) permits the termination of parental rights when "clear and convincing evidence supports that the parent 'had his or her parent-child relationship terminated with respect to another child based on a finding that the parent's conduct was in violation of Paragraph (D) or (E) or substantially equivalent provisions of the law of another state.'" *In re N.G.*, 577 S.W.3d 230, 234 (Tex. 2019) (per curiam) (quoting TEX. FAM. CODE ANN. § 161.001(b)(1)(M)). "Therefore, when parental rights have been terminated under either section 161.001(b)(1)(D) or (E), that ground becomes a basis to terminate that parent's rights to other children." *Id.* "Because only one ground is required to terminate parental rights[,] . . . a section 161.001(b)(1)(M) ground [finding] based on a prior termination would be sufficient to terminate parental rights to another child in another termination proceeding." *Id.*

At trial, the evidence showed that Mother's rights to her first child had been terminated approximately one month before trial. The evidence further established that the only drug testing to which Mother submitted during the previous termination proceeding yielded positive results

8

for the presence of illegal narcotics in her system. Mother admitted that her July 2021 hair-follicle test in her first termination case revealed "some kind of substance." What is more, Mother admitted that the previous termination was based on grounds (D) or (E).

Mother argues in her brief that "the evidence showed while Appellant had her parental rights [to her other child] terminated pursuant to § 161.001(b)(1)(D) or (E), Texas Family Code, Appellant [was] in fact appealing her termination to the Texas Supreme Court." Although the parties do not dispute the grounds on which the previous termination was based, we consider Mother's statement in her brief as a judicial admission that the previous termination was based on ground (D) or (E). *See Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 568 (Tex. 2001) (considering judicial admission contained in summary-judgment response, countermotion for summary judgment, and appellate brief); *Mendoza v. Fid. & Guar. Ins. Underwriters, Inc.*, 606 S.W.2d 692, 694 (Tex. 1980) ("[A] true judicial admission . . . is a formal waiver of proof usually found in pleadings or the stipulations of the parties[,] . . . is conclusive upon the party making it, . . . relieves the opposing party's burden of proving the admitted fact, and bars the admitting party from disputing it.").[5]

Rather than disputing the grounds on which her previous termination was based, Mother contends that, because she filed a petition for review with the Texas Supreme Court on December 7, 2022, termination pursuant to ground (M) was premature because "the Texas

---

[5]Further, "[a]n appellate court may take judicial notice of its own records in the same or related proceeding involving the same or nearly the same parties." *In re J.G.W.*, 54 S.W.3d 826, 833 (Tex. App.—Texarkana 2001, no pet.) (citing *Trevino v. Pemberton*, 918 S.W.2d 102, 103 n.2 (Tex. App.—Amarillo 1996, orig. proceeding)). In our previous opinion involving the termination of Mother's first child, we affirmed the trial court's termination order because we found that sufficient evidence supported the finding of ground D. *See In re C.C.H.*, No. 06-22-00052-CV, 2022 WL 6815317, at *1 (Tex. App.—Texarkana Oct. 12, 2022, pet. denied) (mem. op.).

Supreme Court may still reverse the Order Terminating Parental Rights, abrogating the reason for terminating under section (M)." At least two of our sister courts are split on this issue.

In *In re A.C.*, 394 S.W.3d 633, 640 (Tex. App.—Houston [1st Dist.] 2012, no pet.), appellant mother argued that a prior termination decree could not support a ground (M) finding "because the decree, and therefore the termination, was on appeal and thus not necessarily final." Our sister court rejected that argument, because "finality, in the sense of a complete exhaustion or waiver of all possible appellate remedies, is not expressly required by the text of the statute." *Id.* (citing TEX. FAM. CODE ANN. § 16.001(b)(1)(M)). The court also rejected the argument on the basis that appellant had not superseded the decree during the pendency of the appeal. Finally, the decree—although on appeal—still had issue-preclusive effect. *Id.* at 640–41.

The Houston Fourteenth Court of Appeals has taken a different approach by interpreting ground (M) "to require . . . also that (1) the final termination order is final by appeal and (2) no court has deleted the finding or reversed or set aside the final order." *In re P.W.*, 579 S.W.3d 713, 723 (Tex. App.—Houston [14th Dist.] 2019, no pet.); *but see In re A.D.M.*, No. 14-18-01088-CV, 2019 WL 2097922, at *3, *5 (Tex. App.—Houston [14th Dist.] May 14, 2019, pet. denied) (mem. op.) (failing to require the additional requirements discussed in *In re P.W.*).

Here, we need not resolve this issue because the Texas Supreme Court denied Mother's petition for review on December 30, 2022.[6] *See In re C.C.H.*, 2022 WL 6815317, at *1. The

---

[6]On April 20, 2023, the Texas Supreme Court denied Mother's third motion for extension of time in which to file a motion for rehearing. TEX. JUD. BRANCH, https://search.txcourts.gov/Case.aspx?cn=22-0999&coa=cossup (last visited Aug. 14, 2023).

instant case was tried on March 28, 2023.  As a result, we overrule this issue and conclude that the evidence in support of ground (M) was both legally and factually sufficient.[7]

## IV.     Conclusion

We affirm the trial court's judgment.

Jeff Rambin
Justice

Date Submitted:      July 31, 2023
Date Decided:        August 18, 2023

---

[7]Because only one predicate ground is required for termination, we need not address Mother's arguments with respect to grounds (I), (N), and (O).  Mother did not challenge the trial court's best-interest finding.

11