

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-24-00331-CV
_____

IN THE INTEREST OF A.J.C., A CHILD

On Appeal from the County Court at Law No. 1
Randall County, Texas
Trial Court No. 80487-L1, Honorable Abe Lopez, Presiding by Assignment

March 12, 2025

MEMORANDUM OPINION

Before QUINN, C.J., and PARKER and DOSS, JJ.

The mother of AJC appeals from a judgment that terminated her rights to her child. Apparently, this was the second of two efforts. The first resulted in an April 2023 final order terminating father's parental rights and designating mother as possessory conservator of AJC. Termination efforts began anew once mother subsequently tested positive for methamphetamine.

Through two issues, mother complains that certain evidence should not have been admitted and that the evidence was legally and factually insufficient for the trial court to have found that termination of her parental rights was in the best interest of the child. We affirm.

***Background***

Mother first used methamphetamine in 2015.  She began using again in 2018 to help her function after her husband committed suicide.  She continued to use when she met another man and became pregnant.  She used until she was about twenty weeks along.  At some point, she said the father of that child shoved methamphetamine in her mouth, and, as a consequence, according to mother, she and that baby tested positive for methamphetamine at the time of that child's birth a few weeks later.

In 2019, mother was convicted of assault family violence after an altercation with her then-partner.  The Texas Department of Family and Protective Services (Department) opened a case involving mother in 2020.  Mother did not complete her services in that case.  Furthermore, the child was placed with the father, while mother was denied access or contact.

Mother later conceived the child at issue here, AJC, by another man.  AJC was born in March 2021 and removed from mother's care in September 2021 due to concerns of domestic violence and drug use in the home.  The Department initially petitioned to terminate mother's parental rights to AJC.  In the interim, mother was given a service plan that set forth tasks and services she was required to perform to secure the return of AJC.  Mother completed many of the services but continued to struggle with sobriety and the maintenance of a stable life.  As mentioned above, that petition for termination resulted in the designation of mother as possessory conservator in April 2023.  Yet, after a positive drug screen in December 2023, the Department petitioned to terminate once again.  A hearing was held on that matter in September 2024.

At the hearing, the court heard evidence pertaining to the predicate grounds for termination and to AJC's best interests.  Thereafter, the court terminated mother's rights

to AJC under section 161.001(b)(1)(D), (E), and (O) of the Family Code and determined termination was in AJC's best interest under section 161.001(b)(2).

**Issue One—Admission of Drug Screens**

Through her first issue, mother argues the trial court erred in admitting the results of drug screens taken of herself and AJC. Allegedly, the results were hearsay due to deficient authentication as business records. So too were they untrustworthy, in her view. We overrule the issue.

Regarding the test pertaining to AJC, mother did object. After the court overruled same, the document and test results were the source of further questioning. Mother failed to object to those additional questions and answers. Nor had she sought a running objection when the court admitted the evidence over her objection. Having failed to either continue objecting or secure a running objection, mother failed to preserve for review her complaint encompassing the test results showing that AJC tested positive for methamphetamine. *Bay Area Healthcare Group, Ltd. v. McShane*, 239 S.W.3d 231, 235-36 (Tex. 2007) (holding that purported error in the admission of evidence was waived when objection was not made to ensuing questions and complainant failed to request running objection); *In re Commitment of Massingill*, No. 09-15-00365-CV, 2016 Tex. App. LEXIS 4769, at *10 (Tex. App.—Beaumont May 5, 2016, pet. denied) (mem. op.) (stating that to preserve error regarding the admission of evidence, the complaining party must timely and specifically object each time it is offered or obtain a running objection).

As for the documents showing mother's testing positive for methamphetamine, like evidence was admitted from other sources (including mother's own concession) without objection. That being so, any error in admitting the records of her drug screens was harmless. *See In re L.T.*, No. 07-09-0280-CV, 2010 Tex. App. LEXIS 2250, at *10-11

(Tex. App.—Amarillo Mar. 30, 2010, no pet.) (mem. op.) (holding that error in admission of evidence is harmless when like evidence is admitted elsewhere without objection).

### *Issue Two—Sufficiency of Evidence to Support Best-Interest Finding*

By her second issue, mother argues the evidence was insufficient to support the trial court's best-interest finding. We overrule the issue.

The standard of review is that described in *In re A.C.*, 560 S.W.3d 624 (Tex. 2018). We apply it here.

Next, in determining the best interests of a child, a variety of factors have been consistently considered. They were itemized in *Holley v. Adams*, 544 S.W.2d 367 (Tex. 1976). The itemization is not exhaustive, but simply lists circumstances that have been or could be pertinent to the determination. *Id*. Not all must be established, and the absence of some does not preclude a factfinder from reasonably forming a strong conviction that termination is in the child's best interest. *See In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). Furthermore, evidence relating to the predicate statutory grounds for termination under section 161.001(b)(1) also may be probative to the analysis. *Id.* at 27-28. And, to that end, the failure to challenge the predicate grounds found by the court is a tacit concession by the parent that the evidence establishing those grounds is sufficient. *In re T.C.*, Nos. 07-18-00080-CV, 07-18-00081-CV, 2018 Tex. App. LEXIS 6769, at *13 (Tex. App.—Amarillo Aug. 23, 2018, pet. denied) (mem. op.). That said, we turn to the record before us.

Mother had a lengthy history of drug use commencing in 2015. It included the ingestion of methamphetamine when pregnant and while caring for her children. Moreover, AJC tested positive for methamphetamine at the young age of six months.

4

Though the habit waned for a time, mother nevertheless tested positive for methamphetamine shortly before the final hearing.

So too was there a history of domestic violence wherein she was both the victim and aggressor. Evidence of domestic violence is a consideration in the *Holley* analysis, *see In re J.I.T.P.*, 99 S.W.3d 841, 846 (Tex. App.—Houston [14th Dist.] 2003, no pet.), as is parental drug abuse. That is, a parent's course of conduct as an active drug user demonstrates an unwillingness and inability "to provide the child with a safe environment—a primary consideration in determining the child's best interest." *In re A.C.*, 394 S.W.3d 633, 642 (Tex. App.—Houston [1st Dist.] 2012, no pet.); *see also In re E.G.*, No. 07-23-00197-CV, 2023 Tex. App. LEXIS 6082, at *11-12 (Tex. App.—Amarillo Aug. 10, 2023, no pet.) (mem. op.) (same). Parental drug abuse is also relevant to 1) the ability to provide for a child's emotional and physical needs, 2) emotional and physical endangerment to the child, and 3) stability, or lack thereof, in the home. *See In re E.G.*, 2023 Tex. App. LEXIS 6082, at *12.

In the months before the final hearing, mother worked her services, obtained housing and employment, and even remained sober for eight months. However, as intimated above, she once again tested positive for drugs. So too did she fail to provide urine samples on occasion, leading to the presumption that the tests would have been positive. *See In re J.C.D.Y.*, No. 01-23-00713-CV, 2024 Tex. App. LEXIS 2254, at *34 (Tex. App.—Houston [1st Dist.] Mar. 29, 2024, pet. denied) (mem. op.) (noting same). Evidence also indicated mother's penchant to rely on methamphetamines when coping with depression.

Following the December 2023 positive test, the Department had difficulty contacting mother. The latter also failed to 1) complete certain services, including the

5

court ordered domestic violence classes and outpatient treatment and 2) provide the location of her residence. Indeed, she was evicted from her home for non-payment of rent. Mother also failed to pay child support as previously ordered by the trial court. And, though mother would attend many visitations, she was repeatedly late for them.

By the time of the final hearing, AJC was healthy, having resided in the same foster home for almost three years. Her foster mother testified AJC felt like "mine" and desired to adopt the child. Furthermore, the child had bonded with two other adopted children in the locale; they were "like sisters." Those adopted children are two to three years older than AJC, but the group acts like siblings. The foster mother not only has stable employment but an extended family who treats AJC as one of their own. AJC adapted to her circumstances and attended day care while the foster placement worked.

In essence, mother had opportunity to show ability to parent AJC. She successfully pursued that opportunity for a period of time, only to regress. The circumstances fuel the adage about past being prologue. A child's future need not be dependent upon questionable hope of a parent's improvement. Viewing the evidence in the requisite light, we conclude that both legally and factually sufficient evidence enable a factfinder to form a firm conviction and belief that termination of mother's parental rights was in AJC's best interests.

The final order of termination is affirmed.

Brian Quinn
Chief Justice

6